## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-62516

| | |
|---|---|
| THE COLOMBIAN AIR FORCE PURCHASING AGENCY, a Miscellaneous Foreign Government Organization, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNION TEMPORAL OVL CVRA HELICOPTEROS 2018, LLC, a Wisconsin limited liability company, OPTIMUM VEHICLE LOGISTICS LLC, a Wisconsin limited liability company, and CVRA AERONAUTICAL LLC, a Florida limited liability company, | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## <u>COMPLAINT</u>

Plaintiff The Colombian Air Force Purchasing Agency ("ACOFA" or "Plaintiff") sues Union Temporal OVL CVRA Helicopteros 2018, LLC ("UT OVL"), Optimum Vehicle Logistics LLC ("OVL"), and CVRA Aeronautical LLC ("CVRA") (UT OVL, OVL, and CVRA are collectively referred to as "Defendants") and states as follows:

## <u>PARTIES, JURISDICTION, AND VENUE</u>

1.     Plaintiff is a foreign governmental entity duly authorized by the United States Department of State to operate as a Miscellaneous Foreign Government Organization having its principal place of business in Fort Lauderdale, Broward County, Florida.

2.     Defendant UT OVL is a Wisconsin limited liability company with its principal place of business in Milwaukee, Wisconsin.

3.      Defendant OVL is a Wisconsin limited liability company with its principal place of business in Milwaukee, Wisconsin.

4.      Defendant CVRA is a Florida limited liability company with its principal place of business in Pompano Beach, Broward County, Florida.

5.      This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Specifically, ACOFA brings claims under the federal Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq*., and under the Magnuson-Moss Warranty Act (the "Act"), 15 U.S.C. § 2301 *et seq.*, and has met the required amount in controversy of at least $50,000.00 pursuant to the 15 U.S.C. § 2310(d)(3)(B) of the Act.

6.      Alternatively, the Court has subject matter jurisdiction over this matter due to diversity of citizenship because the "matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or different States." 28 U.S.C. § 1332(a)(4).

7.      This Court has personal jurisdiction over Defendant UT OVL because Defendant conducts substantial and not isolated business activity in Florida, and because Defendant UT OVL breached a contract in Florida that is governed by and construed in accordance with the laws of the State of Florida. The Court also has personal jurisdiction over Defendant UT OVL because UT OVL has through its agents engaged in one or more of the acts enumerated and described in Section 48.193, Florida Statutes.

8.      This Court has personal jurisdiction over Defendant OVL because Defendant OVL conducts substantial and not isolated business activity in Florida, and because Defendant OVL breached a contract in Florida that is governed by and construed in accordance with the laws of the State of Florida. The Court also has personal jurisdiction over Defendant OVL because OVL

has through its agents engaged in one or more of the acts enumerated and described in Section 48.193, Florida Statutes.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

## GENERAL ALLEGATIONS

**A.      ACOFA and the Defendants**

10.      ACOFA is a Colombian governmental agency tasked by the Republic of Colombia with purchasing aeronautical and defense equipment and services for the different branches of the Colombian Ministry of National Defense, including the Armada Nacional de Colombia (the "Colombian Navy") and the Dirección General Marítima ("DIMAR"), which are the relevant military entities here. ACOFA's principal offices are located in this District and ACOFA communicated with Defendants through its offices in this District.

11.      Because ACOFA secures contracts for various entities that comprise of the Colombian Ministry of National Defense, these contracts are highly sought after and each invitation to bid receives numerous submissions from leading manufacturers and suppliers globally.

12.      UT OVL's members are OVL and CVRA.

13.      OVL describes itself as a "world leader" having a 20,000 square foot facility in Wisconsin, boasting a combined 100-plus years of experience with foreign governments across its executive team, and identifying itself as the 2014 recipient of the Small Business Administration's exporter of the year award. *See* OVL Company Video, https://www.optimumvl.com/company-video/ (last visited October 18, 2021).

14.      OVL partnered with CVRA for the purpose of bidding on and hopefully securing a contract with ACOFA.

**B.     The Bid Process**

15.     In 2018, ACOFA was in the market for two used helicopters and as a result invited vendors to place bids in order to win contracts with the Colombian Navy and DIMAR. Those vendors wishing to submit bids were required to submit responses to an invitation to bid ("Invitation to Bid"). The Invitation to Bid specified, among other things, the technical requirements of the helicopters and required representations by the vendor whether its bid would comply with such specifications.

16.     In response to the Invitation to Bid, a number of companies responded, including Defendant UT OVL. In UT OVL's Bid Response dated June 14, 2018, UT OVL advised that UT OVL was comprised of Defendants CVRA and OVL and advised ACOFA that both CVRA and OVL were two companies that were registered and authorized by ACOFA to participate in the bid process. In UT OVL's Bid Response, UT OVL, CVRA, and OVL represented that the two helicopters that Defendants were saying were responsive to the Invitation to Bid, Helicopter 6687 and Helicopter 6690, met all of the technical requirements of the Invitation to Bid.

17.     UT OVL also further stated in UT OVL's Bid Response that UT OVL had been formed by Defendants CVRA and OVL for the purposes of seeking award of the bid and executing the contract if chosen by ACOFA. UT OVL further advised ACOFA that the main legal representative of UT OVL for the purpose of any anticipated transaction related to the Invitation to Bid would be Defendant CVRA. ACOFA was advised that CVRA was providing the experience, capital, execution, delivery of and services relating to the contract. Defendant OVL was identified by UT OVL as the alternate legal representative of UT OVL. ACOFA was advised that OVL was providing the raw material, its experience, and its facilities for the contract.

18.     Notably, UT OVL advised ACOFA in UT OVL's Bid Response that Defendants

CVRA and OVL would respond to any contractual and non-contractual breaches of a contract between UT OVL and ACOFA and that Defendants CVRA and OVL would be liable for all of UT OVL's obligations per UT OVL's Bid Response and any contractual agreements entered into between ACOFA and UT OVL in the event that ACOFA awarded the contract or contracts to UT OVL.

19.     Based on UT OVL's Bid Response, and taking into consideration UT OVL's representation that CVRA and OVL would be responsible for any requirements under contracts entered into between ACOFA and UT OVL, ACOFA awarded the contracts to UT OVL. As a result, UT OVL and ACOFA entered into two separate contracts, one for each helicopter.

**C.     The Contracts**

20.     The first contract was titled Purchase Nro. 008 ACOFA ARC/2018, dated September 27, 2018, with a final delivery date of December 14, 2018, for the purchase of a "navalised" AS365N3 helicopter for the price of $6,295,772.00. *See* Ex. 1 ("Contract No. 008"). The helicopter purchased by ACOFA from UT OVL under Contract No. 008 is referred to as Helicopter 251 ("Helicopter 251").

21.     The second contract was titled Purchase Nro. 015 ACOFA ARC/2018, dated October 29, 2018, with a final delivery date of December 21, 2018, for the purchase of a "navalised" AS365N3 helicopter for the price of $6,018,417.00. *See* Ex. 2 ("Contract No. 015"). The helicopter purchased pursuant to Contract No. 015 is referred to as Helicopter 252 ("Helicopter 252") (collectively, Helicopter 251 and Helicopter 252 are referred to as the "UT OVL Helicopters") (collectively, Contract No. 008 and Contract No. 015 are referred to as the "Contracts").

22.     Pursuant to the Contracts, UT OVL was required to comply with certain technical specifications and was also required to provide certain documentation that substantiated

airworthiness, including airworthiness certificates and aircraft registration certificates, specifically FAA/EASA Aircraft Registration Certificates. *See* Ex. 1 at ¶13(d); Ex. 2 at ¶ 13(d).

23.     The Contracts also required that "[t]he obligation of the seller under the warranty shall include the repair or at its option to replace the items that are returned for non-conformity of acceptance, all costs of packaging, transportation, export and import shall be paid by the seller. *See* Ex. 1 at ¶ 23; Ex. 2 at ¶ 23.

**D.     Failure to Comply with Technical Specifications**

24.     Upon receipt of the UT OVL Helicopters, Colombian Navy the UT OVL Helicopters. After performing the initial inspection, Colombian Navy personnel advised ACOFA of a number of areas of non-compliance of the UT OVL Helicopters. Colombian Navy personnel advised ACOFA that the reports regarding non-compliance with technical specifications were delivered to UT OVL and that UT OVL was in the process of fixing the non-compliance issues.

**Helicopter 251**

|  | **Issue** | **Repair Required/Estimated Cost (Per the terms of the Contracts, UT OVL may either repair or replace the defective component)** |
|---|---|---|
| 1. | MODULE NOs. 2, 3, 4, AND 5 OF ENGINE NO. 1 (S/N 24286) PRESENT AVAILABILITY OF 1915.9 FLIGHT HOURS, CORRESPONDING TO 54.74% OF TBO | REPLACE OR REPAIR<br><br>MOD. 2 $99,086.00<br>MOD. 3 $354,420.00<br>MOD. 4 $108,459.00<br>MOD. 5 $70,560.00 |
| 2. | MODULE NOs. 1, 3, 4 AND 5 OF MOTOR NO. 2 (S/N 24243) PRESENT AVAILABILITY OF 2200.7 FLIGHT HOURS, CORRESPONDING TO 62.88% OF TBO | REPAIR OR REPLACE<br><br>MOD. 1 $49,955.00<br>MOD. 3 $354,420.00<br>MOD. 4 $108,459.00<br>MOD. 5 $70,560.00 |

| 3. | HOURS AVAILABLE FOR **OVERHAUL OF TRANSMISSION**: OR NEW: **2,150** HORAS ARE SPECIFIED IN THE CONTRACT AND ACCORDING TO VERIFICATION OF THE HISTORICAL REGISTER, THE LARGEST COMPONENT HAS ONLY 1,913 HOURS AVAILABLE, WHICH CORRESPONDS TO THE REMAINING 63.76% OF THE 3,000 HOURS TO TBO, ALSO A BREACH OF ITEM 19 OF TECHNICAL APPENDIX "A" OF THE CONTRACT | REPAIR OF REPLACE |
| --- | --- | --- |
| 4. | NO PHYSICAL MANUALS WERE DELIVERED, ONLY AN ONLINE SUBSCRIPTION | SUPPLY OF MAINTENANCE AND OPERATION MANUALS IN PHYSICAL FOR EACH AIRCRAFT AND ONLINE SUBSCRIPTION FOR AT LEAST ONE YEAR |

**Helicopter 252**

| | Issue | Repair Required/Estimated Cost<br>(Per the terms of the Contracts, UT OVL may either repair or replace the defective component) |
|---|---|---|
| 1. | MODULE NOs. 1, 3, 4 AND 5 OF MOTOR No.1 (S/N 24376), WHICH PRESENT AVAILABILITY OF FLIGHT HOURS (19.82%, 27.08%, 19.82% AND 29.23%) BELOW 65% | REPAIR OR REPLACE<br><br>MOD. 1 $49,955.00<br>MOD. 3 $354,420.00<br>MOD. 4 $108,459.00<br>MOD. 5 $70,560.00 |
| 2. | THE MODULE No. 4 OF MOTOR No. 2 (S/N 24306) HAS 54.07% OF HOURS AVAILABLE FOR OVERHAUL, BREACHING WHAT IS REQUIRED BY THE CONTRACT CORRESPONDING TO 65% | REPAIR OR REPLACE |
| 3. | HOURS AVAILABLE TAIL ROTOR BLADES: OR NOVELTY: IN THE CONTRACT, 5,000 HOURS ARE SPECIFIED AND ACCORDING TO THE VERIFICATION OF THE HISTORICAL REGISTRY, THE TAIL ROTOR BLACES PRESENT A DESCRAPANCY, THUS: FIVE (05) BLADES HAVE 4,458.4 HOURS AVAILABLE, AND THE OTHER FIVE (05) HAVE 1,008.4 HOURS AVAILABLE. THIS CORRESPONDS TO 89% AND 20.17% RESPECTIVELY OF ITS POTENTIAL. | 01 SET OF TAIL ROTOR BLADES NEW P/N 365A12-0070-01 AS365N3 |

| 4. | MOORING KIT AND OVERNIGHT PROTECTION ON PLATFORM: OR NEW: NOT DELIVERED, ONLY KIT FOR ONE AIRCRAFT RECEIVED (ARC 251) | ONE OVERNIGHT MOORING KIT IS REQUESTED FOR THE TWO AIRCRAFT. AS365N3 04 MOORING KIT AND OVERNIGHT ARICRAFT EMBARKED MAIN ROTOR BLADE SOCKS ASSY P/N 365A92-1160-01, 08)BLADES COVER ASSY P/N 365A92-1170-00, 02)COVER MRH P/N 365A92-3140-00, 02)COVER,CABIN (CABLE CUTTER) P/N 365A92-0045-01, 04)ENGINE COVER P/N 365A92-5460-00, 04)nozzle blanking cover P/N 365A92-5441-00 02)Fenestron cover P/N 365A92-2340-00 P/N ALTERNO 365A92-2341-02, 04)static port blanking cap P/N 703A92-0205-04 P/N ALTERNO 703A92-0205-05, 04)PITOT COVER P/N 703A92-0201-00 |
| --- | --- | --- |
| 5. | NO PHYSICAL MANUALS WERE DELIVERED, ONLY AN ONLINE SUBSCRIPTION | SUPPLY MAINTENANCE AND OPERATION MANUALS IN PHYSICAL FOR EACH AIRCRAFT AND ONLINE SUBSCRIPTION FOR AT LEAST ONE YEAR |

25.     ACOFA advised Defendants of Defendants' non-compliance with regard to the above-listed components/matters on numerous occasions. UT OVL however continuously failed to repair or otherwise comply, feeding ACOFA with excuses and otherwise misrepresenting the technical specifications of the UT OVL Helicopters.

26.     As of the filing of this Complaint, Defendants have failed to comply with their obligations under the Contracts.

**E.     Failure to Deliver Proper Documentation**

27.     It was later discovered that UT OVL failed to deliver valid airworthiness certificates as required by the Contracts for the UT OVL Helicopters. Such absence of valid airworthiness certificates renders both UT OVL Helicopters unairworthy and greatly diminishes their financial and operational value.

28.     When ACOFA advised UT OVL of UT OVL's failure to deliver the documentation required under the Contracts, UT OVL instead delivered EASA Permits to Fly. Those documents,

however, are not the same as airworthiness certificates. The EASA Permits to Fly have very strict

limitations and are not considered airworthiness certificates.

29.     As of the filing of this Complaint, UT OVL has failed to deliver the documentation

required under the Contracts.

**F.      Failure to Comply with Warranty Requirements under the Contracts**

30.     The Contracts also provide, in addition to the technical specifications, that UT OVL

would provide ACOFA with the following warranty:

> The seller warrants that the mentioned aircraft will have a guarantee (FOR ALL
> MINOR AND MAIN COMPONENTS OF THE AIRCRAFT INCLUDING
> MOTORS AND AVIONICS) for at least twelve (12) months or 600 flight hours
> counted from the delivery of the goods, whichever comes first. . . . The obligation
> of the seller under the warranty shall include the repair or at its option to replace
> the items that are returned for non-conformity of acceptance, all costs of packaging,
> transportation, export and import shall be paid by the seller. The seller will take the
> necessary steps to collect or replace the product from the buyer's premises for
> inspection and repair within fifteen (15) days of receipt of the buyer's warranty
> claim. The seller must replace or repair the defective product within sixty (60) days
> from the date of receipt of the product returned by the buyer or at a mutually agreed
> upon time by the parties. If the seller does not take action in response to the
> warranty claim within the agreed period of time, the seller will reimburse the buyer
> for all costs associated with the replacement or repair of the defective product.

*See* Ex. 1 at ¶ 23; Ex. 2 at ¶ 23.

31.     Pursuant to Paragraph 23 of the Contracts, ACOFA advised UT OVL of warranty

claims with regard to the following components:

**Helicopter 251**

|   | **Issue** | **Repair Required/Estimated Cost**<br>**(Per the terms of the Contracts, UT OVL may either**<br>**repair or replace the defective component)** |
|---|---|---|
| 5. | DOOR LIGHT DOES NOT TURN OFF | SWITCH P/N SP3812-00 X P/N SP3814-00 X P/N SP 3812-10 X P/N SP3814-10 |
| 6. | FLIGHT DIRECTOR MODE NAV-VOR-G/S-V/L DOES | INVESTIGATE CAUSE OF FAILURE BY A SPECIALIST TECHNICIAN. |

| | | |
|---|---|---|
| | NOT WORK AND DELAY IN THE OPERATING SYSTEM | ESTIMATED 120 H/H APROX 3 WEEKS |
| | MOTOR NO. 2 WITH HIGHER FUEL CONSUMPTION THAN MOTOR NO 1 (REQUIRES REGULATION) | |
| | AUTOPILOT     PRESENTS ERRATIC OPERATION | |
| | FLIGHT DIRECTOR SYSTEM IS INOPERATIVE | |
| | ADI OF CO-PILOT PRESENTS INDICATION OF 5 DEGREES UP IN STRAIGHT AND LEVEL FLIGHT | |
| | COLD AIR HANDLER DOES NOT SECURE | |
| 7. | FUEL FLOW METER IS INOPERATIVE | REPAIR P/N 744-082-3 |
| 8. | GPS INOPERATIVE AND WITH OUT-OF-DATE CARD | REPAIR GPS P/N 81440-02-241P X UPGRADE CARD P/N 81461-12 |
| 9. | FUEL PUMP PRESSURE NO. 4 GIVES NO INDICATION | CARTRIDGE PUMPS P/N P94C16-606 X 4 UNITS REPAIR 01 FUEL PUMP |
| 10. | INTERNAL MULTIFUNCTION CARD OUTDATED | UPDATE MULTIFUNCTION CARD P/N 066-04035-0101 |
| 11. | EXCHANGE FOR LIFE LIMIT 22-MAR-2019 01 CENTER TAIL ROTOR DRIVE P/N 365A34-6202-05 | OVERHAUL OF COMPONENTS |

| 12. | EXCHANGE FOR LIFE LIMIT 22-MAR-2019 CPI SYSTEM INTERFACE P/N M256A30A1004 | OVERHAUL DE COMPONENTS |
| 13. | TAIL GEAR BOX P/N 365A336000508 S/N M745 REQUIRES MAJOR SERVICE FOR INTERNAL DAMAGE | OVERHAUL |
| 14. | CPI RELEASE UNIT S/N 753, ELEMENT IS ACTIVE DURING THE AIRCRAFT IGNITION | ACQUIRE NEW EQUIPMENT ELT  CPI P/N 503-16-25 WITH CPI RELEASE UNIT P/N 503-21 X VERIFY CONDITION OF BATTERIES. |
| 15. | FLOTATION SYSTEM, 07 SYSTEM ELEMENTS WITHOUT HISTORICAL RECORD THAT ALLOW THEIR AIRWORTHINESS TO BE DETERMINED. FORWARD LH/RH FLOAT ASSEMBLY CYLINDER ASSEMBLY LH/RH AFT LH / RH FLOATS LIFE RAFT | REQUIRE OVERHAUL – THE DOCUMENTATION PRESENTS DISCREPANCIES IN RELATION TO THE COMPONENTS INSTALLED IN THE HELICOPTER |

**Helicopter 252**

|    | **Issue/Type of Breach** | **Repair Required/Estimated Cost (Per the terms of the Contract, UT OVL may either repair or replace the defective component)** |
| --- | --- | --- |
| 6. | LANDING GEAR DOES NOT RETRACT | ACQUIRE LEVER ASSY P/N 19350 |
| 7. | FUEL FLOWMETER GIVES WRONG INDICATION | EQUIPMENT REQUIRES REPAIR P/N 744-082-3 |
| 8. | RADIO No .2 DOES NOT TRANSMIT | EQUIPMENT REQUIRES REPAIR RADIO KTR908 P/N 064-1023-00 |

| | | |
|---|---|---|
| 9. | LANDING GEAR WARNING LIGHTS DO NOT WORK | ACQUIRE PANEL P/N 455TS01Y |
| 10. | AUTOPILOT DOES NOT TEST | INVESTIGATE CAUSE OF FAILURE BY A SPECIALIST TECHNICIAN. |
| | HYD ISOLATE DOES NOT TURN ON THE SERVO LIGHT DURING THE TEST PUSH BOTTOM FAV DOES NOT OPERATE (DATA SYSTEM AND MOTOR FAULTS) | |
| | BUTTONS VOR, NAV, BC VL, ILS DO NOT ENGAGE ON THE FLIGHT DIRECTOR - AUTOPILOT | |
| 11. | GPS WITH INDICATIONS OF WRONG VELOCITY AND DISTANCE | REPAIR GPS P/N 81440-02-241P X UPDATE CARD P/N 81461-12 |
| 12. | ELT INOPERATIVE | ACQUIRE NEW EQUIPMENT ELT  CPI P/N 503-16-25 WITH CPI RELEASE UNIT P/N 503-21 X VERIFY STATUS OF BATTERIES |
| 13. | INSPECT AT ALL COSTS OF THE TWO ARRIEL 2C ENGINES S/N 24306 AND 24376, TAKING INTO ACCOUNT THE OBSERVATIONS DELIVERED BY THE MANUFACTURING COMPANY SAFRAN | REQUIRE COMPLIANCE, WORK INSPECTION, CERTIFICATION, PRESERVATION, FACTORY. (REPORT NOT PROVIDED BY CONTRACTOR) |
| 14. | DELIVERY AND INSTALLATION OF RESCUE CRANE RETURNED UNDER WARRANTY (1.16) | CRANE LUCAS AIR EQUIPMENT (GOODRICH) P/N 76378-260-D |

| 15. | FLOTATION SYSTEM, 08 SYSTEM ELEMENTS WITHOUT HISTORICAL REGISTRATION THAT ALLOW THEIR AIRWORTHINESS TO BE DETERMINED. FORWARD LH/RH FLOAT ASSEMBLY CYLINDER ASSEMBLY LH/ RH AFT LH / RH FLOATS LIFE RAFT LH / RH | REQUIRE OVERHAUL – THE DOCUMENTATION PRESENTS DISCREPANCIES IN RELATION TO THE COMPONENTS INSTALLED IN THE HELICOPTER |
|---|---|---|

32.     As of the filing of this Complaint, UT OVL has failed to provide warranty services as required under the Contracts.

**G.      Failure to Provide Adequate Technical Service Under the Contracts**

33.     The Contracts also required that UT OVL provide a field service representative who would be on-location in Barranquilla, Colombia. *See* Ex. 1 at ¶ 27(c); Ex. 2 at ¶ 27(c).

34.     It was later learned during an inspection of the UT OVL Helicopters conducted prior to the filing of this lawsuit that Defendants' technical representative was an individual by the name of Richard Carpenter who advised that he had extensive experience with the AS365 helicopter, the type of helicopter that ACOFA purchased under the Contracts.

35.     A major failure that Helicopter 251 was experiencing in breach of the Contract No.. 008 was an issue with tail rotor gearbox part number 365A33600508, revision M, serial number M745 (the "251 Tail Rotor Gearbox"). In May 2019, Helicopter 251 experienced a tail rotor pitch control which required the pilot to conduct an emergency landing. While Helicopter 251 was safely landed, a loss of tail rotor control can result in catastrophic loss of the aircraft and crew.

36.     Since 2011, the 251 Tail Rotor Gearbox has had recurring Airbus Alert Service

Bulletins ("ASB") issued. The ASBs have been superseded from time to time prior to ACOFA's purchase of the UT OVL Helicopters from UT OVL. Despite this, it was discovered by ACOFA prior to the filing of this lawsuit that the 251 Tail Rotor Gearbox was not in compliance with a number of the ASBs applicable to the 251 Tail Rotor Gearbox.

37.     With Mr. Carpenter having extensive experience with the AS365 helicopter through his years with the U.S. Coast Guard and the Dauphin helicopter, UT OVL knew or should have known about the recurring ASBs and airworthiness directive inspection requirements and was required to have advised ACOFA that the 251 Tail Rotor Gearbox was not in compliance and therefore posed a substantial and catastrophic risk of loss of the aircraft and crew onboard the aircraft.

38.     The technical service provided by UT OVL did not comply with the terms of the Contracts.

**H.      Additional Misrepresentations by UT OVL**

39.     As ACOFA continued to work through issues it was experiencing with the UT OVL Helicopters, ACOFA was also advised by Safran, the manufacturer of the engines of the UT OVL Helicopters that, despite representation by UT OVL to the contrary in UT OVL's Bid Response, and despite the agreed-to technical specifications contained with the Contracts, Safran had found discrepancies in the engine logbook maintenance records from November 2015 to November 2018 for the engines of the UT OVL Helicopters. *See* Ex. 3. Specifically, Safran advised ACOFA that "[u]ntil the present date, SAFRAN Helicopter Engines has not received any maintenance records confirming the storage procedures during the concerned period were strictly applied on these two engines in accordance with the Maintenance Manual instructions." *Id.*

40.     UT OVL purposely omitted this information regarding the storage of the UT OVL

Helicopters in order to coerce ACOFA to enter into the Contracts. UT OVL has not corrected this or otherwise attempted to rectify its breach of the Contracts.

**I.       Failure to Comply with Section 27(c) of the Contracts**

41.     Section 27(c) of the Contracts required UT OVL to provide industrial compensation upon request for same by the Ministry of National Defense for the government of Colombia.  *See* Ex. 1 at ¶ 27(c); Ex. 2 at ¶ 27(c).

42.     Despite repeated requests by ACOFA, UT OVL failed to comply with Section 27(c) of the Contracts.

**J.       Pre-Suit Requirements**

43.     ACOFA attempted to work with Defendants in order to remedy the countless and substantial problems with the UT OVL Helicopters, including, but not limited to, sending multiple letters demanding that Defendants remedy, per the terms of the Contracts, the various issues associated with Helicopter 251 and Helicopter 252. However, to date, Defendants have refused to take any responsibility for their misrepresentations dating back to the submission of the UT OVL Bid Response.

44.     All conditions precedent have occurred, been waived, or would otherwise be futile to perform.

**COUNT I – VIOLATION OF 18 USC 1962(c), THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO")**
**(ACOFA v. CVRA and OVL)**

45.     ACOFA incorporates by reference Paragraphs 1-44 as if they were fully set forth herein.

46.     CVRA and OVL (the "CVRA OVL Defendants") are "persons" as that term is defined in 18 U.S.C. § 1961(3).

16

47.     The CVRA OVL Defendants violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the UT OVL RICO Enterprise (defined below) through a pattern of racketeering activity.

48.     ACOFA is a "person injured in his or her business or property" by reason of Defendants' violation of RICO within the meaning of 18 U.S.C. § 1964(c).

**The UT OVL RICO Enterprise**

49.     The following persons and others presently unknown have been members and constitute an "association-in-fact" enterprise within the meaning of RICO, and will be referred to herein collectively as the UT OVL Enterprise:

a.      CVRA provided the experience, capital, execution, delivery of and services relating to the Contracts, *See* Ex. 2; and

b.      OVL provided the raw material, its experience, and its facilities for the Contracts and was the alternate legal representative of UT OVL. *Id.*

50.     The UT OVL Enterprise, which engaged in, and whose activities affected interstate commerce, is an association-in-fact of corporate entities within the meaning of 18 U.S.C. § 1961(4), and it consists of "persons" associated together for a common purpose. The UT OVL Enterprise had an ongoing organization with an ascertainable structure and functioned as a continuing unit with separate roles and responsibilities, and it directly engaged in the distribution of goods and services in interstate commerce.

51.     While the CVRA OVL Defendants participated in the conduct of the UT OVL Enterprise, they each had an existence separate and distinct from the UT OVL Enterprise. Further, the UT OVL Enterprise was separate and distinct from the pattern of racketeering in which the CVRA OVL Defendants have engaged.

52.     At all relevant times, the CVRA OVL Defendants primarily operated, controlled, or managed the UT OVL Enterprise, through a variety of actions. The CVRA OVL Defendants' participation in the UT OVL Enterprise was necessary for the successful operation of its scheme to defraud because the CVRA OVL Defendants concealed the nature and scope of the Helicopters' problems and profited from such concealment.

53.     The members of the UT OVL Enterprise all served a common purpose: to sell to ACOFA the defective UT OVL Helicopters in order to maximize the revenue and profitability of the CVRA OVL Defendants and to coerce ACOFA to award the Contracts to UT OVL by claiming that OVL and CVRA would be directly held responsible for any and all conduct under the Contracts.

54.     The members of the UT OVL Enterprise shared the profits generated by the enterprise, *i.e.*, by sharing the benefit derived from the revenue generated by the scheme to defraud. Each member of the UT OVL Enterprise benefited from the common purpose: CVRA and OVL each benefitted financially by UT OVL securing the Contracts with ACOFA.

**The Pattern of Racketeering Activity**

55.     The CVRA OVL Defendants each conducted and participated in the conduct of the affairs of the UT OVL Enterprise through a pattern of racketeering activity that has lasted at least over 3 years and that consisted of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

56.     For both of the CVRA OVL Defendants, the purpose of the scheme to defraud was to conceal the scope and nature of the deficiencies of the Helicopters in order to secure highly lucrative contracts with ACOFA.

57.     As detailed in the factual allegations above, the CVRA OVL Defendants were well aware that the UT OVL Helicopters did not comply with the various regulations and technical specifications both required by law and under the Contracts.

**The Predicate Acts of Mail and Wire Fraud**

58.     To carry out or attempt to carry out the scheme to defraud, the CVRA OVL Defendants have conducted or participated in the conduct of the affairs of the UT OVL Enterprise through the following pattern of racketeering activity that employed the use of mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

a.     The CVRA OVL Defendants devised and furthered the scheme to defraud by use of the mail, telephone, and internet and transmitted or caused to be transmitted by means of mail and wire communication travelling in interstate or foreign commerce, writing(s) and/or signal(s), including through communications with one another and with ACOFA;

b.     The CVRA OVL Defendants utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described herein. From at least 2018 to the present, the CVRA OVL Defendants regularly utilized the interstate and international mail and wires for payments from Florida and Wisconsin.

59.     CVRA OVL Defendants' pattern of racketeering activity in violation of the mail and wire fraud statutes include but is not limited to the following:

a.     During the relevant time period, the CVRA OVL Defendants transmitted or caused to be transmitted (which herein after also means that the CVRA OVL Defendants acted with knowledge that the use of the interstate or foreign mails and/or wires would

follow in the ordinary course of business, or such use was reasonably foreseeable) by means of mail and/or wire communications travelling in interstate commerce, between Colombia, Florida, and Wisconsin concerning the defective UT OVL Helicopters, such communications including the following:

      i.       Submitting UT OVL's Bid Response;

      ii.      Signing the Contracts;

      iii.      Transmitting numerous communications to ACOFA including communications misrepresenting the nature of the documentation submitted by UT OVL regarding the UT OVL Helicopters and misrepresenting the compliance (or non-compliance) of the UT OVL Helicopters with the technical specifications of the Contracts; and

      iv.      CVRA receiving monies via wire transfer into CVRA's JP Morgan Chase account from UT OVL from the Contracts totaling over $1.7 million from October 2018 to March 2019 which were the payments from ACOFA to UT OVL, *see* Ex. 1 at ¶ 19; Ex. 2 at ¶ 19.

60.      The CVRA OVL Defendants' conduct in furtherance of this scheme was intentional. The CVRA OVL Defendants intended for ACOFA to rely on their misrepresentations that the UT OVL Helicopters complied with all technical specifications and other requirements under the Contracts. The CVRA OVL Defendants also intended for ACOFA to rely on their misrepresentation that CVRA and OVL would be directly responsible under the Contracts, even though it was recently discovered that CVRA filed for Chapter 11 Bankruptcy on October 30, 2018, just **one** day after ACOFA and UT OVL executed Contract No. 015.

61.      ACOFA, through its reliance on the CVRA OVL Defendants' misrepresentations,

was directly harmed as a result of the CVRA OVL Defendants' intentional conduct.

62.     As described throughout this Complaint, the CVRA OVL Defendants engaged in a pattern of related and continuous predicate acts for at least the past 3 years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of defrauding ACOFA and obtaining a substantial sum of money from ACOFA. The predicate acts had the same or similar results, participants, and intended victim. Such predicate acts were related and were not isolated events.

63.     The predicate acts all had the purpose of generating significant revenue and profits for the CVRA OVL Defendants and the UT OVL Enterprise at the significant expense of ACOFA. The predicate acts were committed or caused to be committed by the CVRA OVL Defendants through their participation in the UT OVL Enterprise and in furtherance of its fraudulent scheme. The predicate acts were interrelated in that they involved securing the Contracts with ACOFA and obtaining significant funds from ACOFA.

**Injury to ACOFA**

64.     The CVRA OVL Defendants' actions and omissions and their pattern of racketeering activity has injured ACOFA in the following manner, which is a non-exhaustive list:

a.      Payment by ACOFA for two helicopters that did not meet the technical requirements of ACOFA; and

b.      Depriving ACOFA of having functioning aircrafts necessary for the Colombian Navy and DIMAR's fleet thereby putting national security and the safety of the Colombian Navy and DIMAR's crew and staff at substantial risk.

65.     The CVRA OVL Defendants' violations of 18 U.S.C. § 1962(c) were committed with the specific intent to defraud and as a result ACOFA is entitled to treble damages, equitable relief, and costs and reasonable attorneys' fees under 18 U.S.C. § 1964.

WHEREFORE, ACOFA demands judgment against CVRA and OVL for monetary damages, compensatory damages, statutory damages, punitive damages, treble damages, interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT II – BREACH OF MAGNUSON-MOSS WARRANTY ACT
### (ACOFA v. UT OVL)

66.     ACOFA incorporates by reference Paragraphs 1-44 as if they were fully set forth herein.

67.     The UT OVL Helicopters are consumer products within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. (previously defined herein as the "Act").

68.     UT OVL is a "supplier" within the meaning of the Act.

69.     ACOFA is a "consumer" within the meaning of the Act.

70.     UT OVL expressly warranted that the UT OVL Helicopters being sold to ACOFA complied with the technical requirements of the Contracts.

71.     Within the time period covered by the express warranty in the Contracts, the Helicopters experienced numerous technical failures as alleged above.

72.     The defects of the UT OVL Helicopters have grounded the two UT OVL Helicopters and as a result substantially reduced their value.

73.     At all times material to this lawsuit, ACOFA has fully complied with all warranty terms, express or implied, in connection with the UT OVL Helicopters and their components.

74.     Demand has been made upon UT OVL to repair the defective helicopters as required by the Contracts. Despite such demand being made, UT OVL has failed to make the required repairs.

75.     As a direct and proximate result of UT OVL's actions, ACOFA has been damaged.

WHEREFORE, ACOFA demands judgment against UT OVL for monetary damages,

compensatory damages, statutory damages, interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT III – BREACH OF CONTRACT – CONTRACT NO. 008
### (ACOFA v. UT OVL)

76.     ACOFA incorporates by reference Paragraphs 1-44 as if they were fully set forth herein.

77.     ACOFA and UT OVL entered into Contract No. 008 which was the contract titled Purchase Nro. 008 ACOFA ARC/2018, dated September 27, 2018, with a final delivery date of December 14, 2018, for the purchase of a "navalised" AS365N3 helicopter for the price of $6,295,772.00. *See* Ex. 1.

78.     UT OVL breached Contract No. 008 by failing to comply with the technical specifications as required, failing to provide certain airworthiness certificates, and failing to provide adequate technical support as further alleged in Paragraphs 24-29 and 33-38.

79.     As a direct result of UT OVL's breach, ACOFA has been damaged in a principal amount in excess of $3,020,181.36.

WHEREFORE, ACOFA demands judgment against UT OVL for monetary damages, compensatory damages, interest, attorneys' fees pursuant to Section 34 of Contract No. 008, costs, and such other relief as the Court deems just and proper.

## COUNT IV – BREACH OF CONTRACT – CONTRACT NO. 015
### (ACOFA v. UT OVL)

80.      ACOFA incorporates by reference Paragraphs 1-44 as if they were fully set forth herein.

81.     ACOFA and UT OVL entered into Contract No. 015, which was the contract titled Purchase Nro. 015 ACOFA ARC/2018, dated October 29, 2018, with a final delivery date of

December 21, 2018, for the purchase of a "navalised" AS365N3 helicopter for the price of $6,018,417.00. *See* Ex. 2.

82.     UT OVL breached Contract No. 015 by failing to comply with the technical specifications as required, failing to provide certain airworthiness certificates, and failing to provide adequate technical support as further alleged in Paragraphs 24-29 and 33-38.

83.     As a direct result of UT OVL's breach, ACOFA has been damaged in a principal amount in excess of $1,536,919.49.

WHEREFORE, ACOFA demands judgment against UT OVL for monetary damages, compensatory damages, interest, attorneys' fees pursuant to Section 34 of Contract No. 015, costs, and such other relief as the Court deems just and proper.

## COUNT V – BREACH OF WARRANTY
### (ACOFA v. UT OVL)

84.      ACOFA incorporates by reference Paragraphs 1-44 as if they were fully set forth herein.

85.     UT OVL expressly warranted that the UT OVL Helicopters being sold to ACOFA complied with the technical requirements of the Contracts.

86.     Within the time period covered by the express warranty in the Contracts, the Helicopters experienced numerous technical failures as alleged above.

87.     The UT OVL Helicopters' defects have grounded the two UT OVL Helicopters and as a result substantially reduced their value.

88.     At all times material to this lawsuit, ACOFA has fully complied with all warranty terms, express or implied, in connection with the UT OVL Helicopters and their components.

89.     Demand has been made upon UT OVL to repair the defective Helicopters as required by the Contracts. Despite such demand being made, UT OVL has failed to make the

required repairs.

90.     As a direct and proximate result of UT OVL's actions, ACOFA has been damaged.

WHEREFORE, ACOFA demands judgment against UT OVL for monetary damages, compensatory damages, interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT VI – NEGLIGENT MISREPRESENTATION
### (ACOFA v. UT OVL)

91.     ACOFA incorporates by reference Paragraphs 1-44 as if they were fully set forth herein.

92.     UT OVL undertook and owed a legal duty to ACOFA to exercise ordinary and reasonable care in the course of supplying, distributing, servicing, selling, modifying, repairing, upgrading, and maintaining the UT OVL Helicopters.

93.     UT OVL breached its duties owed to ACOFA by failing to disclose the serious defects of the UT OVL Helicopters and representing that the UT OVL Helicopters complied with the technical specifications of the Contracts.

94.     UT OVL was negligent in making statements and omissions concerning the capabilities and technical specifications of the UT OVL Helicopters because it should have known that the statements and omissions were false.

95.     In making the statements concerning the capabilities and technical specifications of the UT OVL Helicopters, UT OVL intended and expected ACOFA to rely on the statements, or such reliance was reasonably foreseeable by UT OVL.

96.     ACOFA justifiably relied on UT OVL's false statements and omissions regarding the capabilities and technical specifications of the UT OVL Helicopters.

97.     As a direct and proximate result of UT OVL's actions, ACOFA has been damaged.

WHEREFORE, ACOFA demands judgment against UT OVL for monetary damages, compensatory damages, interest, costs, and such other relief as the Court deems just and proper.

## COUNT VII – FRAUDULENT CONCEALMENT
### (ACOFA v. UT OVL, CVRA, AND OVL)

98.     ACOFA incorporates by reference Paragraphs 1-44 as if they were fully set forth herein.

99.     UT OVL, CVRA, and OVL represented to ACOFA that the UT OVL Helicopters complied with the technical specifications of the Invitation to Bid.

100.    UT OVL, CVRA, and OVL also represented to ACOFA that the UT OVL Helicopters complied with the Contracts.

101.    UT OVL, CVRA, and OVL knew or should have known that these representations were false. In fact, the technical representative who was placed on site in Barranquilla per the terms of the Contracts had extensive experience with the class of helicopters purchased under the Contracts and therefore knew or should have known that the UT OVL Helicopters did not meet the required technical specifications and were not in compliance with the ASBs applicable to the UT OVL Helicopters.

102.    UT OVL, CVRA, and OVL concealed the fact that the UT OVL Helicopters did not comply with the technical specifications of the Contracts and also concealed the fact that the documentation provided by them to ACOFA was not the documentation required per the terms of the Contracts.

103.    The concealed information was material to the transactions because had ACOFA known the true condition of the UT OVL Helicopters, ACOFA would not have entered into the transactions.

104.    UT OVL, CVRA, and OVL's concealment was deliberate and knowing and was

designed to cause and actually did cause justifiable and detrimental reliance on the part of ACOFA.

105.    As a direct and proximate result of UT OVL, CVRA, and OVL's actions, ACOFA has been damaged.

WHEREFORE, ACOFA demands judgment against UT OVL, CVRA, and OVL for monetary damages, compensatory damages, interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT VIII – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, SECTION 501.201, FLA. STAT. *ET SEQ.* ("FDUTPA") (ACOFA v. UT OVL)

106.    ACOFA incorporates by reference Paragraphs 1-44 as if they were fully set forth herein.

107.    ACOFA is a consumer within the meaning of FDUTPA.

108.    UT OVL is engaged in trade and commerce within the meaning of FDUTPA.

109.    As further alleged above, UT OVL's actions were unfair, unconscionable, and deceptive. In particular, UT OVL misrepresented that the UT OVL Helicopters met the technical specifications required under the Contracts and provided documentation that was not what UT OVL represented the documentation to be.

110.    Furthermore, violations of the federal Magnuson-Moss Warranty Act are *per se* violations of FDUTPA.

111.    As a direct and proximate cause of UT OVL's actions, ACOFA has been damaged.

WHEREFORE, ACOFA demands judgment against UT OVL for monetary damages, compensatory damages, interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

Dated: December 16, 2021

**RODRIGUEZ-ALBIZU LAW, P.A.**
*Attorneys for Plaintiff*
759 SW Federal Highway
Suite 203
Stuart, FL 34994
Tel: (772) 261-5080

By: */s/ Gerardo J. Rodriguez-Albizu*
    Gerardo J. Rodriguez-Albizu, Esq.
    Fla. Bar No. 61685
    E-mail: grodriguez@ralawpa.com
    Margaret T. Lai, Esq.
    Fla. Bar No. 74395
    E-mail: mlai@ralawpa.com