UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-62516-RUIZ/STRAUSS

THE COLOMBIAN AIR FORCE
PURCHASING AGENCY (ACOFA),

    Plaintiff,
v.

UNION TEMPORAL OVL CVRA
HELICOPTEROS 2018 LLC, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER came before the Court upon Defendant's Motion to Dismiss Plaintiff's Complaint ("Motion") [DE 50]. The Motion has been referred to me to take all action as required by law [DE 66]. I have reviewed the Motion, the Response and Reply thereto [DE 58, 60], and all other pertinent portions of the record. For the reasons discussed herein, I respectfully recommend that the Motion [DE 50] be **GRANTED IN PART and DENIED IN PART**.

**BACKGROUND**

Plaintiff is a Colombian governmental agency that purchases aeronautical and defense equipment and services for different branches of the Colombian Ministry of National Defense, including the Armada Nacional de Colombia (the Colombian Navy) and the Dirección General Marítima. Complaint ¶ 10. In 2018, Plaintiff invited vendors to bid for the opportunity to be awarded contracts to supply two used helicopters. *Id.* ¶ 15. The invitation to bid specified the technical requirements of the helicopters and required vendors to represent whether their bid complied with those requirements. *Id.* Several companies, including Defendant Union Temporal OVL CVRA Helicopteros 2018, LLC ("UT OVL"), responded to Plaintiff's invitation to bid. *Id.*

¶ 16. UT OVL's bid response, dated June 14, 2018, advised that UT OVL's members – CVRA Aeronautical LLC ("CVRA") and Optimum Vehicle Logistics LLC ("OVL"), who are the defendants in this case along with UT OVL – were registered and authorized by Plaintiff to participate in the bid process. *Id.* The bid response also represented that two specific helicopters were responsive to Plaintiff's invitation to bid and that they met all technical requirements of the invitation to bid. *Id.* The bid response also included other representations regarding the roles each defendant would play if UT OVL was awarded the contracts for the helicopters. *See id.* ¶¶ 17-18.

Based on the bid response and the representations that were made, Plaintiff awarded the contracts to UT OVL. *Id.* ¶ 19. As such, Plaintiff and UT OVL entered into two separate contracts (the "Contracts") [DE 1-1, 1-2], each pertaining to one "navalised" helicopter to be purchased by Plaintiff (for more than $6 million each). Complaint ¶¶ 20-21. The Contracts mandated certain technical specifications for the helicopters, required UT OVL to provide certain documentation, including airworthiness certificates, and contained a warranty. *Id.* ¶¶ 22-23. Upon delivery of the helicopters, several technical specification deficiencies were discovered and reported to UT OVL. *Id.* ¶ 24. Defendants, however, have failed to remedy these issues. *Id.* ¶¶ 25-26. Additionally, UT OVL has not delivered the airworthiness certificates mandated under the Contracts and has not satisfied various warranty claims. *See id.* ¶¶ 27-32. Moreover, UT OVL has failed to provide technical service in accordance with the Contracts. *See id.* ¶¶ 33-38.

In light of the foregoing and the other conduct alleged in the Complaint, Plaintiff has asserted the following eight claims against Defendants:

> Count I – Violation of 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act ("RICO");
> Count II – Breach of Magnuson-Moss Warranty Act ("MMWA");
> Count III – Breach of Contract;
> Count IV – Breach of Contract;

   Count V – Breach of Warranty;

   Count VI – Negligent Misrepresentation;

   Count VII – Fraudulent Concealment; and

   Count VIII – Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

UT OVL is named a defendant in Counts II through VIII (i.e., every count except for the RICO count). The other two defendants, CVRA and OVL, are named as defendants in Counts I and VII (the RICO and fraudulent concealment counts).

## **LEGAL STANDARD**

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). When a claim sounding in fraud is alleged, the complaint "must satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (citation omitted). To do so, a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[ ]; and (4) what the defendants gained by the alleged fraud." *Id.* (citation omitted). "'However, alternative means are also available to satisfy the rule' as long as the defendants receive 'fair notice' of the bases for the claims against them." *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1281 (S.D. Fla. 2021) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).[1] Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted). *See also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

---

[1] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage, we consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments." (citation omitted)).

## ANALYSIS

### A. PROCEDURAL CHALLENGE TO MOTION

Plaintiff preliminarily argues in its Response that the Court should not consider the Motion because it is a successive motion to dismiss that is prohibited under Rule 12 of the Federal Rules of Civil Procedure. In this vein, a party that files a motion under Rule 12 is generally prohibited from filing a second Rule 12 motion that raises "a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). In this case, Defendants previously filed a Motion to Dismiss for Forum Non Conveniens ("Prior Motion") [DE 33]. After that motion was denied [DE 47], Defendants filed the instant Motion instead of filing an answer. Plaintiff's argument that the instant Motion is an improper successive motion to dismiss is premised on Plaintiff's contention that the Prior Motion was a Rule 12(b)(3) motion. *See* Fed. R. Civ. P. 12(b)(3) (providing that a party may file a motion to assert the defense of improper venue). However, as the District Court indicated when it denied the Prior Motion, the Prior Motion was a forum non conveniens motion, not a Rule 12(b)(3) motion. *See* [DE 47] at 2; *see also Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Therefore, because Plaintiff's procedural challenge to the instant Motion is based on the faulty premise that the Prior Motion was a Rule 12(b)(3) motion, the Court should reject Plaintiff's procedural challenge.

### B. COUNT I (RICO)

The Motion should be granted as to Count I. Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A private plaintiff pursuing a civil RICO claim "must plausibly allege six

elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros*, 972 F.3d at 1211 (citing *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016)).

Defendants contend that Count I should be dismissed for two reasons. First, they contend that Plaintiff failed to allege sufficient facts to establish the existence of an enterprise.[2] Second, Defendants contend that Plaintiff failed to include allegations with the requisite particularity to establish a pattern of racketeering activity. Specifically, Defendants contend that the alleged predicate acts of racketeering are not pled with particularity. As discussed herein, I agree with Defendants that their second argument warrants dismissal of Count I.[3] Notably, in its Response, Plaintiff largely failed to address Defendants' second argument for dismissal of Count I (instead focusing on Defendants' enterprise argument). In other words, Plaintiff does not grapple with Rule 9(b)'s particularity requirement in the context of Plaintiff's RICO claim.

"[A] plaintiff must allege that each defendant participated in the affairs of the enterprise through a 'pattern of racketeering activity,' which requires 'at least two acts of racketeering activity.'" *Id.* at 1215 (citing 18 U.S.C. §§ 1962(c), 1961(5)). "An act of racketeering activity, commonly known as a 'predicate act,' includes any of a long list of state and federal crimes." *Id.*

---

[2] Plaintiff alleges the existence of an "association-in-fact" enterprise. Complaint ¶¶ 49-50. To plead the existence of such an enterprise, a plaintiff must allege that a group of persons shares the following three structural features: "(1) a 'purpose,' (2) 'relationships among those associated with the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Cisneros*, 972 F.3d at 1211 (citation omitted). Defendant contends that Plaintiff has failed to adequately allege the first two features.

[3] Therefore, I do not address their first argument – regarding whether Plaintiff failed to adequately plead the existence of an enterprise.

(citing 18 U.S.C. § 1961(1)). "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Id.* (citing *Brooks*, 116 F.3d at 1381).

Here, Plaintiff alleges the predicate acts of mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343. *See* Complaint ¶¶ 55-63. As with other fraud claims, Plaintiff's alleged predicate acts must satisfy Rule 9(b)'s heightened pleading standards, which requires Plaintiff to "state with particularity the circumstances constituting fraud." *Cisneros*, 972 F.3d at 1216 (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)). As discussed in Section E below, the Complaint does adequately allege that *UT OVL* misrepresented – in its response to the invitation to bid – that its two helicopters met the technical specifications of the invitation to bid. However, the Complaint fails to allege with particularity the circumstances surrounding any misrepresentations made by the two RICO defendants, CVRA and OVL. *Cf. id.* at 1217 ("[B]lending the identities of the defendants in her allegations of fraud – expecting us to read Petland's complicity into an allegation that specifically names only Petland Kennesaw – is precisely the kind of vagueness in fraud pleadings Rule 9(b) was designed to prevent." (citation omitted)). Moreover, while Count I does contain some minimal factual allegations, Defendants correctly note that Count I is replete with numerous conclusory and vague allegations, especially regarding the alleged predicate acts. *See, e.g.*, Complaint ¶ 58.

Further, with respect to the alleged predicate acts, the Complaint notes, at most, three specific mailings/wires: (1) the submission of UT OVL's bid response; (2) the signing of the Contracts; and (3) "CVRA receiving monies via wire transfer into CVRA's JP Morgan Chase account from UT OVL from the Contracts totaling over $1.7 million from October 2018 to March 2019 which were the payments from ACOFA to UT OVL." *Id.* ¶ 59. With respect to the first two, the Complaint does not allege how the interstate use of mails or wires was involved, and the third

7

is a poorly worded, vague allegation. Plaintiff also alleges the transmission of "numerous" other communications, but none of these communications are specifically identified. *See id.* ¶ 59(a)(iii). Thus, Plaintiff has failed to "state with particularity the circumstances constituting fraud" and thus sufficiently allege the predicate acts constituting a pattern of racketeering activity.

Notwithstanding the foregoing, there is an even larger issue with Count I that warrants dismissal. "In addition to alleging the requisite number of individually chargeable predicate acts, a plaintiff must plausibly allege that the defendant is engaged in 'criminal conduct of a continuing nature.'" *Cisneros*, 972 F.3d at 1216 (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004)). "A plaintiff can do so either by alleging 'a series of related predicates extending over a substantial period of time' or 'the threat of continuity.'" *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)). A "substantial period of time" is measured "in years, not in weeks." *Id.* "To show the 'threat of continuity,' a plaintiff must allege 'either that the alleged acts were part of the defendants' regular way of doing business, or that the illegal acts threatened repetition in the future.'" *Id.* (citation omitted). Moreover, and of particular importance here, "independently chargeable instances of mail or wire fraud cannot constitute a 'pattern of racketeering activity' when they arise from a single transaction." *Id.* (citations omitted).

Plaintiff's RICO claim stems from a single transaction. Thus, even if Plaintiff had adequately alleged criminal conduct related to this transaction, it has not shown (and cannot show) criminal conduct of a *continuing* nature. As such, Plaintiff has failed to plausibly allege a pattern of racketeering activity. Holding otherwise would contravene the purpose of RICO.[4] Therefore, Count I should be dismissed.

---

[4] *See id.* ("Because each use of the mails or wires in furtherance of a single instance of fraud is independently indictable under the federal mail and wire fraud statutes, to hold otherwise could

8

### C. COUNT II (Breach of MMWA)

The Motion should also be granted as to Count II. The MMWA provides a cause of action to consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). A "consumer" includes "a buyer (other than for purposes of resale) of any *consumer product* . . . ." 15 U.S.C. § 2301(3) (emphasis added).[5] Thus, to establish a claim under the MMWA, "a plaintiff must show that the item at issue was a 'consumer product.'" *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 331 (6th Cir. 2007). A "consumer product" refers to "any tangible personal property which is distributed in commerce and which is *normally used for personal, family, or household purposes* (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(1) (emphasis added).

Here, Defendants argue that Count II should be dismissed because the items at issue are two military helicopters, and military grade helicopters are not consumer products because they are not normally used for personal, family, or household purposes. Plaintiff responds that it is inappropriate to determine at the motion-to-dismiss stage whether the helicopters at issue are consumer products. I disagree. *See Zendejas v. Redman*, No. 15-81229-CIV-MARRA, 2016 WL

---

make RICO cases out of one allegedly fraudulent transaction. That would contravene the clear purpose of RICO." (internal citation omitted)).

[5] The complete definition of "consumer" is:

> a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

15 U.S.C. § 2301(3).

1242349, at *5 (S.D. Fla. Mar. 30, 2016) ("The Court disagrees with Zendejas that it is inappropriate to determine whether something is consumer product at the pleading stage."). Although Plaintiff alleges that the helicopters are "consumer products," Complaint ¶ 67, this allegation is a legal conclusion that the Court is not required to accept as true. *Zendejas*, 2016 WL 1242349, at *5.

Based on the factual allegations of the Complaint, the Court can easily conclude from the four corners of the Complaint that the helicopters at issue are not consumer products. That is because the Complaint specifically alleges that the helicopters are "navalised" helicopters. Complaint ¶¶ 20-21. Had the Complaint only alleged the purchase of helicopters generally rather than "navalised" helicopters, the consumer product determination at the motion-to-dismiss stage might present a closer call. *Cf. Waypoint Aviation Servs. Inc. v. Sandel Avionics, Inc.*, 469 F.3d 1071, 1072 (7th Cir. 2006) (noting that "'[a]irplanes' is too large a category for [a consumer product] analysis" at the motion-to-dismiss stage and that "single-engine planes used for personal transport or recreation may be consumer products even though Antonov 225s and skycrane helicopters are not"). However, because the Complaint explicitly alleges that the helicopters are "navalised" helicopters, and because it is not even close to plausible that "navalised" helicopters are "normally used for personal, family, or household purposes," Count II should be dismissed with prejudice.

### D. COUNTS III & IV (Breach of Contract) & COUNT V (Breach of Warranty)

The Motion should be denied as to Counts III, IV, and V. Plaintiff alleges that UT OVL breached the Contracts in three separate ways: "by [1] failing to comply with the technical specifications as required, [2] failing to provide certain airworthiness certificates, and [3] failing to provide adequate technical support as further alleged in Paragraphs 24-29 and 33-38."

Complaint ¶¶ 78, 82. The alleged technical specification issues for each helicopter are set forth in charts in paragraph 24 of the Complaint, the alleged airworthiness certificate issue is discussed in paragraphs 27-29 of the Complaint, and the alleged technical support issue is discussed in paragraphs 33-38 of the Complaint.

The Motion fails for several reasons. Defendants seem to argue (in the Motion and Reply) that because Plaintiff accepted delivery of – and did not reject or return – the helicopters, one can only conclude that the helicopters complied with the requisite technical specifications when delivered. However, Defendants' argument focuses on this one alleged breach without addressing the other two alleged breaches. Additionally, regarding the one alleged breach Defendants do address, Defendants appear to rely on alleged facts that are outside the four corners of the Complaint and seek to have the Court draw inferences in Defendants' favor even though the Court must draw reasonable inferences in Plaintiff's favor at this stage.

Defendants' argument relies on certain language in the Contracts and delivery receipts signed by Plaintiff's representatives. As to the language of the Contracts, Defendants note that section 14 of the Contracts (entitled "Inspection and Acceptance") required Plaintiff to make an *initial* inspection of the products upon receipt to determine the conformity of the products, and that section 15 of the Contracts (entitled "Rejection of Products") required Plaintiff to report non-compliance with technical specifications within 10 days of receiving the helicopters. However, as Plaintiff notes, section 14 of the Contracts also provides that, "[n]otwithstanding the initial inspection, [Plaintiff] retains the right to further inspect and to perform tests of the Products or work performed after the initial ten (days) period and to reject any or all of the Products or work performed which are in [Plaintiff's] judgment defective." [DE 1-1] at 5; [DE 1-2] at 5. Thus, even assuming that Plaintiff did not report any non-conformance within 10 days – which is not apparent

11

from the face of the Complaint – the Court cannot conclude (at least at this stage) that Plaintiff's breach of contract claims are untimely in light of the language Plaintiff notes regarding its ability to perform further inspection and to reject defective products after the initial 10-day period.

With respect to the delivery receipts, these receipts are not referred to in, or attached to, the Complaint.  Rather, Defendants filed them as a supplement [DE 51] to the Motion and seek to have the Court consider them in connection with the Motion.  As Defendants note, the delivery receipts allegedly signed by Plaintiff's representatives indicate that the helicopters were received "to satisfaction," in good condition, and "according to the [C]ontract[s]."  However, Defendants have failed to show that the Court can consider the delivery receipts at this stage.

Ordinarily, courts may not look beyond a pleading – including exhibits thereto, which are treated as part of the pleading – when ruling on a motion to dismiss under Rule 12(b)(6).  *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020); *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019).  Nonetheless, documents attached to a motion to dismiss may be considered without converting the motion into a motion for summary judgment if the documents are (1) "central to the plaintiff's claim" and (2) "their authenticity is not challenged."  *Crowder*, 963 F.3d at 1202 (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)); *see also Crawford's Auto Ctr.*, 945 F.3d at 1162 (citing *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015)).  A document is central to a complaint when it is "a necessary part of [a plaintiff's] effort to make out a claim."  *Kalpakchian v. Bank of Am. Corp.*, 832 F. App'x 579, 583 (11th Cir. 2020) (quoting *Day*, 400 F.3d at 1276).

Here, while Plaintiff has not challenged the authenticity of the delivery receipts, Defendants have not shown (or even attempted to show) that the delivery receipts are central to Plaintiff's claim.  And it is difficult to see how they could be as nothing in the delivery receipts

12

[DE 51] provides any indication that the delivery receipts are a necessary part of Plaintiff's effort to prove its claims. Moreover, even if the delivery receipts could be considered at the motion-to-dismiss stage, it is reasonable to infer that Plaintiff would not necessarily have been able to identify all technical specification issues through an *initial* inspection – of two naval helicopters costing more than $6 million each – at the time of delivery (when Plaintiff signed the delivery receipts). Of course, as noted above, section 14 of the Contracts permitted Plaintiff to perform further inspections and testing following the initial inspection.

Defendants also appear to claim in the Motion that at least some of the technical specification issues alleged in the Complaint involve warranty issues and that Plaintiff fails to allege relevant dates in the Complaint to show that the issues complained of "fall with[in] the warranty time frame." [DE 50] at 11. Defendants' convoluted arguments are difficult to follow, but to the extent that Defendants are arguing that Plaintiff's breach of contract or warranty claims are time-barred, the Court cannot resolve such an issue in Defendants' favor at the motion-to-dismiss stage for the very reason that untimeliness is not apparent from the four corners of the Complaint. *See United States v. Borgono*, No. 18-21835-CIV, 2019 WL 1755709, at *4 (S.D. Fla. Apr. 19, 2019) ("'Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations or laches.' That is, '[a] court may only dismiss a claim as untimely under Rule 12(b)(6) if it is clear from the face of the complaint that it is hopelessly time-barred.'" (internal citations omitted)); *see also Skye v. Maersk Line Corp.*, No. 11-21589-CIV, 2011 WL 4528305, at *3 (S.D. Fla. Sept. 28, 2011) ("Simply put, plaintiffs need not make allegations of time in their complaints, but if they do, such allegations can be challenged. . . . Here, Plaintiff's Amended Complaint does

13

not set out specific allegations of when the actions underlying the claims occurred. Such omission does not make time a material term subjecting the Amended Complaint to dismissal.").[6]

For the foregoing reasons, the Motion should be denied as to Counts III and IV. Moreover, because the Motion appears to seek dismissal of Count V (breach of warranty) based on Defendants' same argument regarding the Complaint failing to include allegations to establish the timeliness of the warranty claim, the Motion should likewise be denied as to Count V. Significantly, in Count V, Plaintiff alleges that the technical failures with the helicopters occurred "[w]ithin the time period covered by the express warranty in the Contracts." Complaint ¶ 86.

### E. COUNTS VI & VII (Negligent Misrepresentation & Fraudulent Concealment)

The Motion should also be denied as to Counts VI and VII. Defendants contend that Counts VI and VII should be dismissed for two reasons: (1) they run afoul of the independent tort doctrine; and (2) they are not pled with particularity as required under Rule 9(b). However, in making these arguments, Defendants make no effort to engage with the allegations of the Complaint. As such, they have failed to meet their burden of showing that Counts VI and VII should be dismissed.[7]

---

[6] Moreover, in arguing that Plaintiff was required to allege certain additional information and in otherwise arguing for dismissal of Counts III and IV (and certain other counts), Defendants fail to provide legal authority to adequately support their arguments. In the context of Counts III and IV, the only legal authority Defendants cite pertains to Rule 12(b)(6) and pleading requirements generally (Defendants also cite one case to simply set forth the breach of contract elements). *Cf. Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1279 (S.D. Fla. 2020) ("On a Rule 12(b)(6) motion to dismiss, [t]he moving party bears the burden to show that the complaint should be dismissed. The movant must support its arguments for dismissal with citations to legal authority. Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal." (internal citations and quotation marks omitted)); *United States v. Toll*, No. 16-CV-62214, 2016 WL 7048321, at *2 (S.D. Fla. Dec. 5, 2016) (same).

[7] "On a Rule 12(b)(6) motion to dismiss, [t]he moving party bears the burden to show that the complaint should be dismissed." *Madinya v. Portfolio Recovery Assocs., LLC*, No. 18-CV-61138,

14

In a breach of contract action, the independent tort doctrine prevents a plaintiff from pursuing a tort claim premised upon a contractual breach unless the acts complained of are independent of the acts giving rise to the breach of contract claim. *See Inspirations Nevada LLC v. Med Pro Billing, Inc.*, No. 20-CV-60268, 2021 WL 2156677, at *4-7 (S.D. Fla. May 26, 2021). Thus, an alleged misrepresentation that is only based on, and not independent of, the failure to perform under a contract, will not give rise to a tort claim. *Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020). As one Florida appellate court has explained,

> It is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud. . . . It is similarly well settled that, for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach. Both of these legal principles are rooted in the notion that, when a contract is breached, the parameters of a plaintiff's claim are defined by contract law, rather than by tort law.

*Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017) (internal citations omitted); *see also Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1223 (11th Cir. 2018) ("Under Florida law, '[m]isrepresentations relating to the breaching party's performance of a contract do not give rise to any independent cause of action in tort, [where] such misrepresentations are interwoven and indistinct from the heart of the contractual agreement.'" (citations omitted)).

---

2018 WL 4510151, at *5 (S.D. Fla. Sept. 20, 2018) (quoting *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014)) (internal quotation marks omitted); *see also Cohen v. Bd. of Trustees of the Univ. of the D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016) (recognizing that Rule 12(b)(6) places the burden of persuasion on the moving party). "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it[.]" *Madinya*, 2018 WL 4510151, at *5 (quoting *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)).

Here, Defendants have wholly failed to carry their burden of persuasion as they have not explained in the Motion *how the allegations of the Complaint show* that Counts VI and VII are barred by the independent tort doctrine. To be fair, certain allegations would clearly be barred by the independent tort doctrine. For instance, Count VI appears to be premised, *in part*, on a representation that the helicopters "complied with the technical specifications of the Contracts." Complaint ¶ 93. But the Complaint also alleges representations preceding the contracts – that Defendants represented (or concealed) compliance with the technical specifications set forth in the invitation to bid. *See id.* ¶¶ 15-19. Notably, fraudulent inducement types of claims, where misrepresentations allegedly induced one to enter into a contract in the first place, are generally considered to be independent from a breach of contract. *See Island Travel*, 300 So. 3d at 1240 n.7 ("Generally, fraud in the inducement is an independent tort because the alleged misrepresentation inducing one to enter into the contract is unrelated to the obligations under the contract." (citing *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996))). While that is not always the case, *see Inspirations Nevada*, 2021 WL 2156677, at *6-7, Defendants have failed to demonstrate in the Motion that – based on the allegations of the Complaint – the inducement-related misrepresentations here are not independent.

With respect to Defendants' Rule 9(b) argument, Defendants have likewise failed to discuss the specific allegations of the Complaint in arguing that the allegations fall short. They contend that "[t]here is no specific reference to any precise statements that the Plaintiff allegedly relied upon," [DE 50] at 14, but the Complaint specifically alleges that UT OVL represented that two specific helicopters "met all of the technical requirements of the Invitation to Bid." Complaint ¶ 16. Moreover, the Complaint alleges that this representation was made in UT OVL's June 14, 2018 bid response. *Id.* Thus, Plaintiff has identified when and how the alleged misrepresentation

16

was made. Additionally, Plaintiff alleges that based on the bid response, Plaintiff awarded the contracts to UT OVL. *Id.* ¶ 19. In other words, Plaintiff alleges reliance on the representations made in the bid response. While Defendants contend that reliance has not been plausibly alleged because "Plaintiff is a sophisticated buyer," [DE 50] at 15, accepting this contention would require improperly drawing inferences in favor of a non-moving party.

Ultimately, Defendants' relatively perfunctory arguments – which do not engage with the allegations of the Complaint – for dismissal of Counts VI and VII are insufficient to establish that dismissal of these counts is warranted.[8]

### F. COUNT VIII (FDUTPA)

The Court should reject the arguments made in the Motion for dismissal of Count VIII. A FDUTPA plaintiff must establish three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). Satisfying the first element requires showing that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.* at 983-84 (quoting *State, Off. of Att'y Gen. v.*

---

[8] I recognize that I have recommended dismissing Plaintiff's RICO claim in part on Rule 9(b) grounds, whereas I do not recommend dismissing Counts VI and VII on Rule 9(b) grounds. There are a few reasons for this difference. First and foremost, although Plaintiff adequately pled misrepresentation or concealment regarding compliance/non-compliance with the technical specifications in the context of the bid response, Plaintiff failed to include adequate factual allegations regarding the specific use of the mail or wires for the predicate acts of mail and wire fraud in Plaintiff's RICO claim, and Plaintiff failed to include sufficient factual allegations to establish the requisite *pattern* of racketeering activity. Second, Defendants did more to wrestle with the allegations of Count I of the Complaint in arguing for the dismissal of the RICO claim, whereas they did little to confront the allegations of Counts VI and VII in arguing for their dismissal. Third, while Plaintiff failed to address the Rule 9(b) argument in the context of the RICO claim, Plaintiff did adequately respond to Defendants' Rule 9(b) argument in the context of Counts VI and VII. For these reasons, and for the reasons more fully discussed in Sections B and E above, Count I should be dismissed, whereas Counts VI and VII should not be dismissed.

*Commerce. Comm. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007)). Whether a practice is likely to deceive a consumer acting reasonably is determined using an objective standard. *Id.* at 984. Actual reliance is not an element of a FDUTPA claim. *Id.*

Here, Defendants raise three arguments for dismissal of Count VIII. First, Defendants make a relatively perfunctory argument, unsupported by case law, that Plaintiff was required to plead its FDUTPA claim with particularity. In this district, cases are split on whether a FDUTPA claim may be subject to Rule 9(b)'s particularity requirement. *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1231 (S.D. Fla. 2021) (collecting cases). Given this split, and because Defendants have not even attempted to explain why Rule 9(b) should be applied here, Defendants' particularity argument should not result in dismissal of Count VIII.

Second, Defendants contend that no reasonable person spending over $12 million to purchase two helicopters "would just take another's word for it that the helicopters met technical specifications." [DE 50] at 19. In other words – although Defendants do not frame it this way – Defendants appear to be arguing that it is not plausible that Defendants' alleged misrepresentations would be likely to deceive a reasonable consumer, from an objective standpoint, in similar circumstances. In support of their argument, Defendants fail to discuss any specific case law considering whether to dismiss a FDUTPA claim based on the argument Defendants make here. On the other hand, Plaintiff has pointed to at least one case indicating that the type of argument Defendants make is better suited for a later stage rather than consideration at the motion-to-dismiss stage. *See* [DE 58] at 14 (citing *Felice v. Invicta Watch Co. of Am., Inc.*, No. 16-CV-62772-RLR, 2017 WL 3336715, at *4 (S.D. Fla. Aug. 4, 2017)). Therefore, and because Defendants have done little to develop their second argument for dismissal of Count VIII, their argument should be rejected at this stage.

Third, Defendants contend that the allegations of the Complaint fail to demonstrate actual damages. Plaintiff responds that paragraph 24 of the Complaint identifies repair costs (i.e., actual damages) necessitated by Defendants failing to provide helicopters meeting the requisite technical specifications. I agree with Plaintiff that the Complaint plausibly pleads actual damages. The Complaint alleges that Plaintiff bargained for helicopters that met certain technical specifications, but that Defendants provided helicopters that did not meet those specifications. In other words, accepting the allegations of the Complaint as true, Plaintiff plausibly pleads that it was damaged because it received helicopters with certain defective components. *Cf. Carriuolo*, 823 F.3d at 987 (discussing a Florida appellate court decision where the court noted in the context of FDUTPA damages, "[t]his case turns on a relatively simple question, at least as to damages – Is a car with defective seatbelt buckles worth less than a car with operational seatbelt buckles? Common sense indicates that it is." (quoting *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 991 (Fla. 5th DCA 2004)).

For the foregoing reasons, Defendants have failed to show that Count VIII should be dismissed.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 50] be **GRANTED IN PART and DENIED IN PART** and that Counts I and II be **DISMISSED**.[9]

---

[9] I also recommend that the District Court require Plaintiff to provide further information to establish Defendants' citizenship. In the Complaint, Plaintiff alleges that the Court has subject matter jurisdiction under 28 U.S.C. § 1331 due to the federal claims alleged in Counts I and II. Complaint ¶ 5. If the District Court adopts my recommendation to dismiss Counts I and II, this basis for subject matter jurisdiction would no longer exist. Plaintiff does not allege that the Court has supplemental jurisdiction over the other claims (and, at any rate, the Court could decline to exercise supplemental jurisdiction if Counts I and II were dismissed). Plaintiff does allege that diversity jurisdiction exists in the alternative under 28 U.S.C. § 1332. Complaint ¶ 6. But Plaintiff does not identify the members of two of the defendant LLCs – CVRA and OVL – or the citizenship

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 27th day of December 2022.

Jared M. Strauss
United States Magistrate Judge

---

of such members. To the extent any member of any defendant is not citizen of a State, diversity jurisdiction will not exist (given that the sole Plaintiff is not a member of a State). *See McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1313 (11th Cir. 2021) ("Alienage diversity under 28 U.S.C. § 1332(a)(2) 'must be complete,' such that 'an alien on both sides of a dispute will defeat jurisdiction.' . . . [Section] 1332(a)(2) 'does not grant jurisdiction over a suit between a corporation incorporated solely in a foreign state and another alien, regardless of the corporation's principal place of business.'" (quoting *Caron v. NCL (Bahamas) Ltd.*, 910 F.3d 1359, 1364 (11th Cir. 2018))); *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011) ("[A]lienage jurisdiction prohibits an alien from suing another alien in federal court unless the suit includes United States citizens as plaintiffs and defendants."); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000) ("It is a standard rule that federal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides." (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1558 (11th Cir. 1989))); *Les Pecheries Norref Quebec Inc. v. Sea Delight Grp., LLC*, No. 21-CV-62102, 2022 WL 673764 (S.D. Fla. Feb. 16, 2022), *report and recommendation adopted*, 2022 WL 673739 (S.D. Fla. Mar. 7, 2022).