UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-62516-STRAUSS

THE COLOMBIAN AIR FORCE
PURCHASING AGENCY (ACOFA),

    Plaintiff,
v.

UNION TEMPORAL OVL CVRA
HELICOPTEROS 2018 LLC, *et al.*,

    Defendants.
                            /

## ORDER

THIS MATTER came before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Motion") [DE 100]. The Court has reviewed the Motion, the Response and Reply thereto [DE 102, 113], and all other pertinent portions of the record. For the reasons discussed herein, the Motion [DE 100] will be **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

This case stems from Defendants' sale of two allegedly defective helicopters to Plaintiff, a Colombian governmental agency that purchases aeronautical and defense equipment and services for different branches of the Colombian Ministry of National Defense, including the Armada Nacional de Colombia (the Colombian Navy) and the Dirección General Marítima. *See* Amended Complaint [DE 90] ¶¶ 10, 19-20, 24-26. In 2018, Plaintiff invited approved vendors to bid for the opportunity to be awarded contracts to supply two used helicopters. *Id.* ¶ 19. The invitation to bid specified the technical requirements of the helicopters and required vendors to represent whether their bid complied with those requirements. *Id.* Several companies, including Defendant Union

Temporal OVL CVRA Helicopteros 2018, LLC ("UT OVL"), responded to Plaintiff's invitation to bid. *Id.* ¶ 20. UT OVL's bid responses advised that UT OVL's members – CVRA Aeronautical LLC ("CVRA") and Optimum Vehicle Logistics LLC ("OVL"), who are the defendants in this case along with UT OVL – were registered and authorized by Plaintiff to participate in the bid process. *Id.* The bid responses also represented that two specific helicopters were responsive to Plaintiff's invitation to bid and that they met all technical requirements of the invitation to bid. *Id.* The bid response also included other representations regarding the roles each defendant would play if UT OVL was awarded the contracts for the helicopters. *See id.* ¶¶ 21-22.

Based on the bid response and the representations that were made, Plaintiff awarded the contracts to UT OVL. *Id.* ¶ 24. As such, Plaintiff and UT OVL entered into two separate contracts (the "Contracts") [DE 90-1, 90-2], each pertaining to one "navalised" helicopter to be purchased by Plaintiff (for more than $6 million each). Amended Complaint ¶¶ 25-26. The Contracts mandated certain technical specifications for the helicopters, required UT OVL to provide certain documentation, including airworthiness certificates and aircraft registration certificates, and contained a warranty. *Id.* ¶¶ 27-28. Upon delivery of the helicopters, several technical specification deficiencies were discovered and reported to UT OVL. *Id.* ¶ 34. Plaintiff provided several follow-up notifications to Defendants regarding the deficiencies, but Defendants have failed to remedy the issues. *Id.* ¶¶ 35-36. Additionally, UT OVL has not delivered the airworthiness certificates mandated under the Contracts and has not satisfied various warranty claims. *See id.* ¶¶ 37-41, 44. Moreover, UT OVL has failed to provide technical service in accordance with the Contracts. *See id.* ¶¶ 45-50.

In light of the foregoing conduct Plaintiff alleges on the part of Defendants, Plaintiff imposed sanctions against Defendants (in December 2019), which served to prevent Defendants

from submitting bids to Plaintiff for a period of two years. *Id.* ¶¶ 42, 77, 81. Additionally, in December 2021, Plaintiff brought this lawsuit against Defendants, asserting the following eight claims – in its initial Complaint [DE 1] – in this case:

> Count I – Violation of 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act ("RICO");
>
> Count II – Breach of Magnuson-Moss Warranty Act ("MMWA");
>
> Count III – Breach of Contract;
>
> Count IV – Breach of Contract;
>
> Count V – Breach of Warranty;
>
> Count VI – Negligent Misrepresentation;
>
> Count VII – Fraudulent Concealment; and
>
> Count VIII – Violation of the Florida Deceptive and Unfair Trade Practices Act.

UT OVL is named a defendant in every count except for the RICO count. The other two defendants, CVRA and OVL, are named as defendants in Counts I and VII (the RICO and fraudulent concealment counts). The Court previously dismissed Plaintiff's RICO claim (Count I) without prejudice, dismissed Plaintiff's MMWA claim (Count II) with prejudice, and denied Defendants' request for dismissal of all other claims. *See* [DE 72, 79]. On March 2, 2023, Plaintiff filed an Amended Complaint [DE 90], amending its RICO count (as well as certain general allegations). Pursuant to the Motion, Defendants now seek dismissal of Plaintiff's amended RICO claim.

## **LEGAL STANDARD**

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). When a claim sounding in fraud is alleged, the complaint "must satisfy the heightened

3

pleading standards embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (citation omitted). To do so, a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[ ]; and (4) what the defendants gained by the alleged fraud." *Id.* (citation omitted).

To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).[1] Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal

---

[1] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage, we consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments." (citation omitted)).

conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

The Court agrees with Defendants that Plaintiff's RICO claim (Count I) is subject to dismissal. Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A private plaintiff pursuing a civil RICO claim "must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros*, 972 F.3d at 1211 (citing *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016)).

Here, Plaintiff fails to plausibly allege a "pattern of racketeering activity,"[2] a requirement that is "[e]ssential to any successful RICO claim." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). Adequately pleading a pattern of racketeering activity requires alleging that: "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Id.* (citations omitted); *see also Cisneros*, 972 F.3d at

---

[2] Defendants contend that Count I is also separately subject to dismissal for other reasons, including that Plaintiff failed to plausibly establish the enterprise and injury elements. The Court, however, does not reach Defendants' additional, independent arguments for dismissal.

1215 ("[A] plaintiff must allege that each defendant participated in the affairs of the enterprise through a 'pattern of racketeering activity,' which requires 'at least two acts of racketeering activity.'" (citing 18 U.S.C. §§ 1962(c), 1961(5)). "An act of racketeering activity, commonly known as a 'predicate act,' includes any of a long list of state and federal crimes." *Cisneros*, 972 F.3d at 1215 (citing 18 U.S.C. § 1961(1)). "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Id.* (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)). In this case, Plaintiff's RICO claim is premised upon the predicate acts of mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343. *See* Amended Complaint ¶ 88.

As indicated above, "[i]n addition to alleging the requisite number of individually chargeable predicate acts, a plaintiff must plausibly allege that the defendant is engaged in 'criminal conduct of a continuing nature.'" *Cisneros*, 972 F.3d at 1216 (citing *Jackson*, 372 F.3d at 1264). "Continuity 'is both a closed– and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" *United States v. Browne*, 505 F.3d 1229, 1259 (11th Cir. 2007) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). Thus, pleading continuity requires alleging "a series of related predicates extending over a substantial period of time" (closed-ended continuity) or "the threat of continuity" (open-ended continuity). *Cisneros*, 972 F.3d at 1216 (quoting *H.J. Inc.*, 492 U.S. at 242); *see also Jackson*, 372 F.3d at 1265-67. Nonetheless, "independently chargeable instances of mail or wire fraud cannot constitute a 'pattern of racketeering activity' when they arise from a single transaction." *Cisneros*, 972 F.3d at 1216 (citations omitted). "Because each use of the mails or wires in furtherance of a single instance of fraud is independently indictable under the federal mail and wire fraud statutes, to hold otherwise could make RICO cases out of one allegedly

fraudulent transaction," which "would contravene the clear purpose of RICO." *Id.* (internal citation omitted); *see also In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1158-59 (S.D. Fla. 2019) ("Given the routine use of mail and wire communications in business operations, RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014)) (cleaned up) (internal quotation marks omitted)).

In dismissing the prior version of Plaintiff's RICO claim, the Court explained that Plaintiff has not shown (and cannot show) criminal conduct of a *continuing* nature because Plaintiff's RICO claim stems from a single transaction. [DE 72] at 8; [DE 79] at 2-3. In the instant Motion, Defendant maintains that Plaintiff's amended RICO claim continues to suffer from the same deficiency. Plaintiff does not appear to contend in its response that its amended RICO claim stems from more than one transaction. Instead, Plaintiff insists that "[a]cts that are part of the same scheme or transaction can qualify as distinct predicate acts." [DE 102] at 8 (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1397 (11th Cir. 1994)). However, the foregoing statement – which was made in a case (*Cox*) that was not predicated on mail or wire fraud – does not conflict with the Eleventh Circuit's clear pronouncement in *Cisneros* that "independently chargeable instances of *mail or wire fraud* cannot constitute a 'pattern of racketeering activity' when they arise from a single transaction." 972 F.3d at 1216 (emphasis added) (citations omitted). Thus, Plaintiff has failed to show that its amended RICO claim cures the single-transaction deficiency that resulted in dismissal of the prior version of Plaintiff's RICO claim.

Plaintiff also separately maintains that it has adequately pled both closed-ended and open-ended continuity. But even putting aside the single-transaction issue, the factual allegations in the

Amended Complaint do not plausibly establish either closed-ended or open-ended continuity. First, as noted above, "[c]losed-ended continuity can be established by 'proving a series of related predicates extending over a substantial period of time.'" *Ferrell v. Durbin*, 311 F. App'x 253, 256 (11th Cir. 2009) (quoting *Jackson*, 372 F.3d at 1265). For purposes of closed-ended continuity, a "substantial period of time" is measured "in years, not in weeks." *Cisneros*, 972 F.3d at 1216 (citing *Jackson*, 372 F.3d at 1267). In other words, "closed-ended continuity cannot be met with allegations of schemes lasting less than a year." *Ferrell*, 311 F. App'x at 256 (quoting *Jackson*, 372 F.3d at 1266). Even a period of closer to two years, however, is often insufficient – at least standing alone – to establish closed-ended continuity. *See id.* (finding that a complaint alleging misrepresentations over an almost two-year period did not sufficiently allege closed-ended continuity, and explaining, *inter alia*, that the complaint only involved a single scheme and two victims); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("Since the Supreme Court decided *H.J. Inc.*, we have never held a period of less than two years to constitute a substantial period of time. This conception of the substantiality requirement accords with that of other circuits. Although we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity . . . ." (internal quotation marks and citations omitted)). Moreover, "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Jackson*, 372 F.3d at 1267 (collecting cases).

Here, Plaintiff contends that it has adequately alleged closed-ended continuity because it has alleged fraudulent actions extending over a three-year period and "more than 'a single scheme with a discrete goal.'" [DE 102] at 8, 9. Regarding the time period involved, it is wholly unclear

how Plaintiff has calculated a three-year period.[3]  Although the Amended Complaint does include certain conclusory allegations concerning a three-year period, *see* Amended Complaint ¶¶ 78, 87, 94, the factual allegations viewed in the light most favorable to Plaintiff establish a far shorter period.  For starters, Plaintiff alleges that Defendants' acts to defraud Plaintiff began with the submission of Defendants' bid response in late 2018 – though it does allege elsewhere that Defendants initially made misrepresentations as early as June 2018.  *See* Amended Complaint ¶¶ 55, 61, 80, 90.  Plaintiff separately alleges that Defendants' misrepresentations continued through June 2020, when Defendants' counsel sent a demand letter to Plaintiff.  *Id.* ¶ 61.  However, the non-conclusory allegations do not reveal any misrepresentations that occurred after 2018.  At the very least, no new misrepresentations beyond those made in the submission of the bid response are alleged.

Plaintiff does allege that the use of mail and/or wires in connection with Defendants' scheme to defraud occurred between June 2018 and June 2020.  *Id.* ¶ 90.  Thus, even if the Court were to assume that this provides the relevant period for purposes of closed-ended continuity, the Amended Complaint identifies a two-year period at best, not a three-year period.  Regardless, even if the Court were to accept that Plaintiff adequately alleged a two-year period for purposes of considering closed-ended continuity, that would not change the fact that this case is still about a single scheme to defraud with a discrete goal.  In arguing otherwise, Plaintiff asserts that

---

[3] Plaintiff appears to calculate this three-year period by looking to the period of time between Defendants' submission of the bid response (late 2018) and the filing of this lawsuit (late 2021). However, "[t]he period pertinent to the closed-ended continuity inquiry is that within which the predicate acts were committed, not the period underpinning the entire scheme." *New York Packaging II LLC v. Priv. D Cap. Grp. Corp.*, No. 22-20276-CIV, 2023 WL 2306690, at *6 (S.D. Fla. Mar. 1, 2023) (citing *Birmingham v. Doe*, No. 21-CV-23472, 2022 WL 18134962, at *21 (S.D. Fla. Dec. 6, 2022), *report and recommendation adopted*, 2023 WL 112308 (S.D. Fla. Jan. 5, 2023)).

Defendants had three *goals*: (1) to "win the lucrative contracts with [Plaintiff] for the helicopters," (2) to "continue to extort[4] additional monies from [Plaintiff] years after signing the contracts," and (3) to continue "the on-going and potential award of new contracts which are the essence of [Defendants'] business." [DE 102] at 9.  As an initial matter, this is not responsive to Defendants' argument that Plaintiff has only alleged a single *scheme*.  And the Amended Complaint is all about a single scheme to defraud Plaintiff into awarding the Contracts to UT OVL.  In other words, all of the misrepresentations Defendants allegedly made were aimed at inducing Plaintiff to purchase the two helicopters from UT OVL.[5]  Likewise, the goal of those alleged misrepresentations was to

---

[4] Notwithstanding Plaintiff's "extortion" characterization, nothing in the Amended Complaint plausibly suggest that Defendants extorted Plaintiff.  *See Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138-39 (11th Cir. 2011) ("Extortion is defined as 'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'" (quoting 18 U.S.C. § 1951(b)(2))).

[5] *See* Amended Complaint ¶ 18 ("CVRA partnered with OVL specifically for the purpose of intentionally misleading ACOFA into securing the contracts that are the subject of this dispute."); ¶ 21 ("UT OVL also further stated in UT OVL's Bid Response that UT OVL had been formed by Defendants CVRA and OVL for the purposes of seeking award of the bid and executing the contract if chosen by ACOFA"); ¶ 55 ("Defendants' acts aimed to defraud ACOFA began in 2018, when the seemingly capable union of CVRA and OVL sought to obtain a lucrative contract from ACOFA with the submission of their Bid Response via mail communications."); ¶ 56 ("[T]he UT OVL Defendants numerous written submissions falsely certif[ied] the technical specifications were made by the Defendants to procure ACOFA's award for their bid."); ¶ 57 ("[T]he UT OVL Defendants transmitted various communications via electronic mail to ACOFA knowingly making false representations about the helicopters throughout the vetting process until they were awarded the contracts."); ¶ 71 ("The CVRA OVL Defendants' participation in the UT OVL Enterprise was necessary for the successful operation of *its scheme to defraud* because the CVRA OVL Defendants concealed the nature and scope of the Helicopters' problems and profited from such concealment." (emphasis added)); ¶ 79 ("For both of the CVRA OVL Defendants, *the purpose of the scheme to defraud* was to conceal the scope and nature of the deficiencies of the Helicopters by providing ACOFA with false certifications in the Bid Response and the continuous communications thereafter detailing that the Helicopters complied with ACOFA's technical requirements as is set forth in paragraphs 80 and 90, below." (emphasis added)); ¶ 80 ("In their Bid Response, the UT OVL Defendants provided false statements regarding the Helicopters in order to induce ACOFA into the agreements and further solicit additional monies from Plaintiff"); ¶ 93 ("ACOFA was directly harmed as a result of the CVRA OVL Defendants' intentional conduct and fraudulent misrepresentations upon which ACOFA reasonably relied upon. To wit, the CVRA

defraud Plaintiff out of the money paid for the two helicopters. *Cf. Bandyopadhyay v. Defendant 1*, No. 22-CV-22907, 2023 WL 2263552, at *3 (S.D. Fla. Feb. 28, 2023) ("Plaintiff's multiple instances of deception do not suffice to show a 'pattern of racketeering activity' because they were all 'in furtherance of a single instance of fraud,' that is, the Defendant's efforts to deprive Plaintiff of 957,281.50 USDT.")

As to the second and third goals Plaintiff claims Defendants had – extorting additional monies and continuing to seek the award of new contracts – there are some conclusory allegations regarding such goals. *See* Amended Complaint ¶¶ 72, 79. However, the Amended Complaint does not plausibly allege that these were goals *of Defendants' alleged scheme to defraud*. Notably, mail and wire fraud require "intentional participation in a scheme to defraud," and a "scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (citations omitted). Here, the alleged material misrepresentations made by Defendants were intended to deceive Plaintiff out of the money paid under the Contracts for the two helicopters. In other words, the Amended Complaint does not indicate that Defendants made misrepresentations to deceive Plaintiff out of other funds. While Plaintiff does allege that Defendants later attempted to recover $130,000 for repairs if Plaintiff would not lift sanctions against Defendants, Plaintiff does not allege that any material misrepresentations were made to deceive Plaintiff into paying such funds.[6] Rather, the plain

---

OVL Defendants made material misrepresentations regarding the condition of Helicopter 251 and Helicopter 252 including but not limited to misrepresentations identified in paragraph 90 above.").

[6] Nor does Plaintiff allege that it paid such funds or that the demand for such funds caused some new, further injury to Plaintiff. Rather, the Amended Complaint alleges one distinct injury. That is, Plaintiff paid for two defective helicopters. The alleged failure to comply with the contractual

purpose of the misrepresentations (and any omissions or concealment) alleged in the Amended Complaint was to deceive Plaintiff into paying money to Defendants to purchase two defective helicopters. Thus, not only does the Amended Complaint only allege a single scheme to defraud, it alleges a scheme to defraud with a discrete goal. Furthermore, the scheme to defraud had only a single victim (Plaintiff). Accordingly, regardless of whether or not Plaintiff has plausibly alleged predicate acts extending over a two-year period, Plaintiff has failed to plausibly allege closed-ended continuity. *Cf. Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015) ("They cannot show closed-ended continuity because there is only one victim, LTC, and 'only a single scheme with a discrete goal' connecting the predicate acts—*i.e.*, Appellees' alleged scheme to divert business proceeds from LTC to LWW and themselves.").

The allegations of the Amended Complaint also fail to plausibly establish open-ended continuity. "To show the 'threat of continuity,' a plaintiff must allege 'either that the alleged acts were part of the defendants' regular way of doing business, or that the illegal acts threatened repetition in the future.'" *Cisneros*, 972 F.3d at 1216 (quoting *Jackson*, 372 F.3d at 1267); *see also Browne*, 505 F.3d at 1259-60 ("The burden under th[e] [open-ended] theory can be met by proof that (1) the 'racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,' or (2) the predicate offenses are 'part of an ongoing entity's regular way of doing business,' including where 'the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.'").

As an initial matter, Plaintiff does not allege or argue that the alleged predicate offenses – mail and wire fraud – are part of Defendants' regular way of doing business. Rather, Plaintiff

---

warranty did not create a new injury. Rather, it meant that Defendants failed to rectify the already-existing injury (the injury caused by Plaintiff paying for defective helicopters).

12

attempts to establish open-ended continuity by contending it adequately alleged that Defendants' illegal acts threatened repetition into the future.  In so arguing, Plaintiff contends it has alleged that (1) CVRA and OVL had entered into other contracts with ACOFA going back to 2016, (2) CVRA and OVL had other pending contracts with ACOFA, (3) the business relationship between CVRA and OVL had an indefinite duration, and (4) in June 2020, an attorney representing Defendants at the time sent a demand letter on their behalf stating that the sanctions Plaintiff imposed against Defendants were "deleteriously impacting the on-going and potential award of new contracts which are the essence of Union Temporal's partners' business" and are "tortiously interfering with Union Temporal's partners' ability to finalize new contracts."  [DE 102] at 9.

But even accepting the foregoing, none of this plausibly shows that the "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future." *Browne*, 505 F.3d at 1260.  The Amended Complaint does include some largely conclusory allegations that because CVRA and OVL were parties to additional contracts with Plaintiff and because they submitted other offers for new contracts to Plaintiff, Plaintiff "experienced the threat of continuity of the fraudulent conduct into the future."  Amended Complaint ¶¶ 59, 76.  However, "open-ended continuity cannot be shown by conclusory allegations that once begun, the alleged misconduct threatens to continue into the future."  *Kivisto*, 413 F. App'x at 138.  While the Amended Complaint does include some additional facts regarding other contracts between the parties, *see* Amended Complaint ¶¶ 16, 60, it provides no allegations of any wrongdoing or threatened wrongdoing related to those additional contracts.  Moreover, the fact that Plaintiff imposed sanctions against Defendant for the wrongdoing alleged in the Amended Complaint also undermines Plaintiff's allegations regarding threats of future fraudulent conduct by Defendants. *Cf. Jackson*, 372 F.3d at 1268-69 ("Furthermore, in spite of the plaintiffs' bald suggestion that the

13

defendants might have continued their fraud in the future had they not been uncovered, this is not sufficient to allege open-ended continuity. Indeed, since the investigation did reveal and ultimately sanction the defendants' activities, it is virtually certain that they will *not* engage in similar conduct in the future."). Thus, the Amended Complaint fails to establish open-ended continuity.

For the foregoing reasons, Plaintiff has failed to plausibly allege a pattern of racketeering activity. Therefore, Count I fails to state a claim upon which relief can be granted.

## **CONCLUSION**

For the reasons discussed above, it is **ORDERED and ADJUDGED** that the Motion [DE 100] is **GRANTED IN PART and DENIED IN PART**. Count I of the Amended Complaint [DE 90] is **DISMISSED** without leave to amend.[7] However, Defendants' request for dismissal based on lack of subject matter jurisdiction is denied for the reasons stated in DE 101.[8]

---

[7] In a footnote at the end of its response, Plaintiff includes a perfunctory request for leave to amend in the event the Court grants the Motion. *See* [DE 102] at 11 n.1. Plaintiff's request is denied because it is improper and fails to comply with Fed R. Civ. P. 7(b). *See Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1236 (11th Cir. 2022) ("Here, Chabad raised its request to file a second amended complaint at the end of its responses to the Defendants' motions to dismiss. This is procedurally improper. '[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.'" (quoting *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018))); *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("When the shareholders requested leave to amend their complaint in a footnote to their brief in opposition to the defendants' motion to dismiss, it was within the discretion of the district court to deny that request *sub silentio*. 'Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.' The shareholders also failed to comply with Federal Rule of Civil Procedure 7(b) when they failed to attach a copy of their proposed amendment or to describe the substance of their proposed amendment." (internal citations omitted)); *see also Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018); *Baker v. Batmasian*, 730 F. App'x 776, 781 (11th Cir. 2018). Moreover, Plaintiff has already been given an opportunity to amend its RICO claim. *See* [DE 79].

[8] Defendants' request for an award of attorneys' fees is also denied. Defendants make their request for a fee award in passing without providing any basis for such an award.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 18th day of May 2023.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge