# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 21-CV-62516-JMS

|  |  |
|---|---|
| THE COLOMBIAN AIR FORCE PURCHASING AGENCY, a Miscellaneous Foreign Government Organization, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNION TEMPORAL OVL CVRA HELICOPTEROS 2018, LLC, a Wisconsin limited liability company, OPTIMUM VEHICLE LOGISTICS LLC, a Wisconsin limited liability company, and CVRA AERONAUTICAL LLC, a Florida limited liability company, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

---

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff The Colombian Air Force Purchasing Agency ("ACOFA"), pursuant to FED R. CIV. P. 56 and S.D. FLA. L.R. 56.1, hereby files its Motion for Partial Summary Judgment as to Counts III, IV, and VII[1] of the Amended Complaint [ECF No. 90] against Defendants Union Temporal OVL CVRA Helicopteros 2018 LLC ("UT OVL"), Optimum Vehicle Logistics LLC ("OVL") and CVRA Aeronautical LLC ("CVRA") (UT OVL, OVL, and CVRA collectively, "Defendants"), and in support thereof states as follows:

---

[1] By filing this Motion for Partial Summary Judgment, Plaintiff does not waive and expressly reserves its right to pursue its remaining claims set forth against Defendants in the Amended Complaint [ECF No. 90].

## <u>INTRODUCTION</u>

As this Court is well aware, this case concerns UT OVL's sale of two multimillion-dollar helicopters to the Colombian government.  The undisputed material facts undeniably demonstrate that UT OVL and its constituent members, OVL and CVRA, made repeated false representations regarding the helicopters at issue.  More specifically, Defendants outright materially misrepresented – in multiple writings – the condition of the helicopters and their compliance with the technical specifications required.  As a direct result of Defendants' multiple material misrepresentations in writing, ACOFA entered into the two contracts at issue and purchased the two helicopters for approximately $6 million each.  It was not until the helicopters were subsequently delivered to ACOFA, and detailed inspections were performed, that ACOFA discovered the real state of the helicopters it purchased.

Accordingly, ACOFA brings this Motion seeking summary judgment on ACOFA's claims for breach of contract in Counts III and IV of the Amended Complaint against UT OVL, and as to ACOFA's claim for fraudulent concealment in Count VII against all Defendants, as the undisputed material facts and record evidence show ACOFA is entitled to judgment as a matter of law.  As to Counts III and IV, ACOFA seeks damages for breach of contract in that several major components of the helicopters did possess at a minimum 65% remaining time before overhaul and that UT OVL failed to deliver the helicopters with the hours remaining before overhaul as specifically indicated for the engines in the helicopters and other components.  With respect to Count VII, ACOFA seeks a judgment based on Defendants' numerous, material misrepresentations in writing which induced ACOFA to award the bids to UT OVL for the helicopters and thereby caused ACOFA to enter into the contracts at issue.

## BACKGROUND

In 2018, ACOFA was in the market for two used helicopters and as a result initiated an Invitation to Bid related to the anticipated purchase of the two helicopters.  *See* Stmt. of Facts at ¶1.  The Invitation to Bid specified, among other things, the technical requirements of the helicopters and required representations by the vendor whether its bid would comply with such specifications.  *Id*. at ¶2.  In response to the Invitation to Bid a number of companies submitted bid proposals, including UT OVL.  *See* Compl. at ¶20; Answer at ¶20.

**A.      UT OVL's First Bid Response.**

On June 14, 2018, Carlos Rovati, as the legal representative for UT OVL, submitted UT OVL's formal bid response to the Invitation to Bid (the "First Bid Response").  *See* Stmt. of Facts at ¶3.  The First Bid Response indicated that UT OVL met all required specifications, including that UT OVL would comply with certain post-sale services, including flight training, flight simulator training, and maintenance courses, a Technical Warranty for a period of 12 months or 600 flight hours, and that no major component would have less than eighty percent (80%) time before overhaul.  *Id*. at ¶4.  The First Bid Response identified two helicopters bearing serial numbers 6687 ("Helicopter 6687") and 6690 ("Helicopter 6690"), respectively.  *Id*. at ¶5.

**B.      The Helicopters.**

Helicopters 6687 and 6690 are model Airbus (Eurocopter) AS365N3 helicopters.  *See* Smt. of Facts at ¶6.  The AS365N3 helicopter possesses two engines each made up of five individual modules.  *Id*. at ¶¶7-8.  Each engine module can be replaced, repaired, and/or overhauled as individual modules.  *Id*. at ¶8.  A completely overhauled module results in 3,500 available flight hours before the next overhaul is required.  *Id*. at ¶9.  Because the engine possesses five independent modules, each module within the engine can have different times remaining before

overhaul.  *Id*. at ¶10.  To determine the remaining time before overhaul for an engine, each individual module's time before overhaul must be tracked.  *Id*. at ¶11.  If one module has zero hours remaining before overhaul, the helicopter cannot fly until such time as that specific module is either overhauled or replaced.  *Id*. at ¶12.

An individual module cannot be partially overhauled.  *Id*. at ¶13.  Rather, the only way to increase a specific module's time remaining before overhaul is either to replace the module with a like module that has more time remaining before overhaul available, or to overhaul completely the respective module.  *Id*. at ¶14.  As a result, the module with the least hours remaining before overhaul is used when referencing the overall engine's hours remaining before overhaul.  *Id*. at ¶15.  This is because if the helicopter is flown with a module having zero hours remaining before overhaul, the module can fail and cause a catastrophic loss.  *See* Dreikorn Dep.[2] at 57:8-16.

**C.     UT OVL Materially Misrepresents the Conditions of the Helicopters.**

Following UT OVL's First Bid Response a meeting was held on or about July 25, 2018, between members of the Colombian Navy and representatives of UT OVL.  *See* Stmt. of Facts at ¶16.  Carlos Rovati attended the meeting telephonically.  *Id*. at ¶17.  During said meeting it was expressed to Mr. Rovati that certain components of Helicopter 6687 were below sixty-five percent (65%) time before overhaul, including both engines.  *Id*. at ¶18.  Mr. Rovati in response offered to adjust the hours to these components so that they would comply with the required 65% time remaining before overhaul.  *Id*. at ¶19.  Later that day, Mr. Rovati sent UT OVL's revised bid response which expressly indicated that the bid was being transmitted "with the component changes to comply with 65% of the remaining time in its components" per the meeting held earlier

---

[2] Citations to deposition testimony are referenced as set forth in ACOFA's Statement of Material Facts filed contemporaneously with this Motion, unless otherwise indicated.

that day (the "July 25th Bid Response").  *Id.* at ¶21.   Notably, the July 25th Bid Response represented that Helicopter 6687's engine 1's time remaining before overhaul was now 2,275 (as opposed to the 1,800 hours remaining before overhaul as represented in the First Bid Response) and that engine 2's time remaining before overhaul was 3,009.18 hours.  *Id.* at ¶22.   Mr. Rovati also "guarantee[d]" that Helicopter 6687 complied with all technical specifications required.  *Id.* at ¶24.   Thereafter, and on multiple occasions, Mr. Rovati reaffirmed, in writing, that Helicopter 6687's engine 1's time remaining before overhaul was 2,275 hours and that engine 2's time remaining before overhaul was 3,009.18, including in a subsequent, final bid response.  *Id.* at ¶¶25-26, 30-31.

On October 12, 2018, Mr. Rovait, on behalf of UT OVL, submitted a separate bid response for a second used naval helicopter (the "October 12th Bid Response").  *Id.* at ¶33.   The October 12th Bid Response contained the same material misrepresentations as those set forth above with the exception that the object was Helicopter 6690 (as opposed to Helicopter 6687) and the related technical specifications for Helicopter 6690.  *Id.* at ¶34.   What is more, the October 12th Bid Response expressly represented that engine 1 possessed 3,500 hours available before overhaul, engine 2 possessed 3,009 hours available before overhaul, and that Helicopter 6690's tail rotor blades had 5,000 hours remaining before overhaul.  *Id.* at ¶35.

**D.      The Contracts.**

In reliance on the material representations made with respect to the technical specifications for both Helicopter 6687 and Helicopter 6690, on September 27, 2018, ACOFA and UT OVL entered into Contract No. 008 ACOFA ARC/2018 for purchase of Helicopter 6687 (the "6687 Contract"), and on October 29, 2018, ACOFA and UT OVL entered into Contract No. 015 ACOFA ARC/2018 for the purchase of Helicopter 6690 (the "6690 Contract").  *Id.* at ¶¶32 & 36.   The 6687

Contract contained the same technical specifications for Helicopter 6687 which UT OVL represented in its final bid response, including the available hours before overhaul of both engines 1 and 2, and also represented that Helicopter 6687's main rotor gearbox transmission had 2,150 hours remaining before overhaul. *Id.* at ¶37. The 6690 Contract contained the same technical specifications for Helicopter 6690 which UT OVL represented in the October 12th Bid Response, including the available hours before overhaul of both engines 1 and 2, and also represented that the tail rotor blades had 5,000 hours remaining before overhaul. *Id.* at ¶38.

On December 12, 2018, Mr. Rovati, on behalf of UT OVL, sent a letter to ACOFA reaffirming the hours remaining before overhaul for each helicopter which matched those identified for each helicopter in the 6687 Contract and 6690 Contract, respectively. *Id.* at ¶¶44-45. Thereafter, on December 14, 2018, UT OVL delivered the 6687 Helicopter to ACOFA, and on December 21, 2018, delivered the 6690 Helicopter to ACOFA. *Id.* at ¶46. Importantly, at the time UT OVL delivered the Helicopters to ACOFA, Defendants knew the Helicopters did not comply with the required contract specifications contained in the 6687 Contract and the 6690 Contract. *Id.* at ¶47. Although ACOFA initially accepted the Helicopters, upon further detailed inspection it learned that the Helicopters failed to comply with certain critical technical specifications as represented repeatedly by Defendants, and most importantly, with respect to the time before overhaul for the engines of each respective helicopter.

## **MEMORANDUM OF LAW**

### I.   THE STANDARD OF REVIEW.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine dispute of material fact

by "citing to particular materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers or other material." FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the movant has met its burden under Rule 56(c), the nonmoving party cannot avoid a judgement as a matter of law by relying on the pleadings and "must do more than simply show that there is some metaphysical doubt as to a material fact." *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-97 (1986). "[T]he nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation omitted).

In reviewing a motion for summary judgment, the trial court must view the facts in a light most favorable to the nonmoving party. An issue of fact is "material" where it may affect the final disposition of a case under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original). Summary judgment against a party is appropriate where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Id.* at 322-23.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The Court should, instead, weigh the evidence as a reasonable jury would in order to determine the plausibility of inferences relied upon by the non-moving party. *See Anderson*, 477 U.S. at 249.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## II.   ACOFA IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNTS III, IV, & VII OF THE AMENDED COMPLAINT

### A.   UT OVL Breached the 6687 Contract and 6690 Contract as a Matter of Law.

Count III of the Amended Complaint alleges UT OVL breached the 6687 Contract by delivering Helicopter 6687 which failed to comply with the technical specifications required under the 6687 Contract. *See* Compl. at ¶101.  Count IV similarly alleges UT OVL breached the 6690 Contract when it delivered Helicopter 6690 in a manner which failed to comply with the required technical specifications. *Id.* at ¶105.

"Under Florida law, a breach of contract action requires a valid contract, material breach of that contract, and damages." *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1228 (S.D. Fla. 2009).  "The interpretation of a written contract is a question of law to be decided by the court." *Gilman Yacht Sales, Inc. v. FMB Investments, Inc.*, 766 So. 2d 294, 296 (Fla. 4th DCA 2000); *see also Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1004 (11th Cir. 2014) ("Traditional contract-interpretation principles make contract interpretation a question of law . . . .").  "In construing a contract, the legal effect of its provisions should be determined from the words of the entire contract." *Sugar Cane Growers Co-op. of Fla., Inc. v.*

*Pinnock*, 735 So.2d 530, 535 (Fla. 4th DCA 1999).  "[T]he actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Summitbridge Credit Invs. III, LLC v. Carlyle Beach, LLC*, 218 So.3d 486, 488 (Fla. 4th DCA 2017) (citation and internal quotation mark omitted).  "[T]he court's task is to apply the parties' contract as written, not 'rewrite' it under the guise of judicial construction." *City of Pompano Beach v. Beatty*, 222 So.3d 598, 600 (Fla. 4th DCA 2017).

It is undisputed that the 6687 Contract and 6690 Contract are valid contracts which were entered into between ACOFA and UT OVL.  *See* Compl. at ¶¶100 & 104; Answer at ¶¶100 & 104. Both Contracts, moreover, contained detailed specifications required for each Helicopter, including the time before overhaul for each of the two engines contained on each Helicopter.  *See* Stmt. of Facts at ¶¶37-38.  The 6687 Contract and the 6690 Contract accurately reflected the terms agreed upon between the parties.  *Id*. at ¶39.  Indeed, there was nothing excluded from either the 6687 Contract or the 6690 Contract which did not reflect the agreement of the parties.  *Id*. at ¶40.

However, at the time of delivery, the engines and the main rotor gearbox transmission of Helicopter 6687 failed to meet the required specifications for time before overhaul as set forth in the 6687 Contract.  Annex A to the 6687 Contract expressly stated that engine 1 had 2,275 hours before overhaul, engine 2 had 3,009.18 hours before overhaul, and the main rotor gearbox transmission had 2,150 hours before overhaul.  *See* 6687 Contract at 15 (Items 31 – 33).  In reality, at delivery Helicopter 6687's engine 1 possessed 1,915.9 hours before overhaul, engine 2 possessed 2,200.7 hours before overhaul, and the main rotor gearbox transmission had 1,913.8 hours before overhaul.  *See* Stmt. of Facts at ¶¶50-52.  The cost to overhaul the deficient modules in the engines of Helicopter 6687 is $1,215,919.00.  *Id*. at ¶¶53-54.  The cost to overhaul Helicopter 6687's main rotor gearbox transmission is $964,807.13.  *Id*. at ¶55.

Similarly, at the time of delivery, the engines of Helicopter 6690 and the tail rotor blades failed to meet the required specifications for time remaining before overhaul as set forth in the 6690 Contract. Annex A to the 6690 Contract expressly stated that engine 1 had 3,500 hours before overhaul, engine 2 had 2,458 hours before overhaul, and the tail rotor blades had 5,000 hours before overhaul. *See* 6690 Contract at 15 (Items 31, 32, & 35). At delivery, however, Helicopter 6690's engine 1 possessed 693.5 hours before overhaul, engine 2 possessed 1,892.10 hours before overhaul, and the tail rotor blades possessed 1,008.4 hours remaining before overhaul. *See* Stmt. of Facts at ¶¶56-58. The cost to overhaul the deficient modules in the engines of Helicopter 6690 is $691,853.00. *Id*. at ¶¶59-60. The cost to replace the five (5) tail rotor blades is $51,689.20. *Id*. at ¶61. ACOFA also later learned from Safran, the engines manufacturer, that Safran had discovered discrepancies in the engine logbooks for Helicopter 6690 and as a result, the engines needed to be sent back to Safran's repair center for inspection. *Id*. at ¶¶62-64. The cost of repair for the preservation inspection is $325,000.00 per engine (i.e., $650,000.00 total for both engines). *Id*. at ¶65.

Accordingly, ACOFA is entitled to summary judgment on Counts III and IV of the Amended Complaint as a result of UT OVL's material breach of the 6687 Contract and 6690 Contract for failing to deliver the 6687 Helicopter and 6690 Helicopter as contractually required, and the Court should award damages to ACOFA with respect to Count III in the amount of $2,180,726.13, and with respect to Count IV in the amount of $1,393,542.20.

**B.      Summary Judgment is Proper as to Count VII.**

Count VII of the Amended Complaint is premised on Defendants' material misrepresentations, in writing, to ACOFA regarding the technical specifications of the Helicopters during the bid process. *See* Compl. at ¶¶121-134. The elements for a claim of fraudulent

concealment are (1) concealment or a failure to disclose a material fact, (2) which Defendants know or should have known should be disclosed, (3) which Defendants knew their concealment or failure to disclose would induce ACOFA to act, (4) Defendants had a duty to disclose the material fact, and (5) ACOFA detrimentally relied on the misinformation.  *See Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015).

Here, it is undisputed that Defendants on multiple occasions materially misrepresented the adequacy of the Helicopters and that they met the rigid technical specifications set forth in each contract.  To be sure, Mr. Rovati testified and readily admitted that Defendants *knew* the Helicopters did not comply with the required technical specifications when UT OVL entered into the contracts with ACOFA:

> Q.  But you testified that the modules themselves didn't meet the 65 percent requirement, correct?
>
> [Mr. Rovati]:  Yes.
>
> Q.  And when you deliver[ed] the helicopters to the Plaintiff, you delivered the helicopters to the Plaintiff knowing that the modules did not make the 65 percent requirement, correct?
>
> A.  Yes.

UT OVL Dep. at 98:9-16.  *See also* CVRA Dep. at 171:14-21 (admitting that the 6690 Helicopter engines did not comply with the contractual specifications stated on the 6690 Contract).

Nor can Defendants claim ignorance that the Helicopters did not comply with the required contract specifications or blame the failure on someone else.  For example, in the September 7th Bid Response and the October 12th Bid Response Mr. Rovati "declare[d] and agree[d] to fully know the content of each and every one of the technical specifications detailed in the Offer Request that governs this process contracting and contained in **ANNEX 001 REQUIRED TECHNICAL SPECIFICATIONS**"; that he had personally "carried out a detailed, meticulous and exhaustive

analysis of the technical specifications contained in ANNEX 001"; that he "**expressly indicates that under no reason do[es] [he] exonerate [him]self from the responsibility that come to its fulfillment**"; and that he "**AGREE[D] TO GIVE THEM STRICT COMPLIANCE.**"  Stmt. of Facts at ¶¶29 & 34 (emphasis in original).  The September 7th Bid Response expressly stated that Helicopter 6687 complied with all technical requirements, including that no major component presented "less than 65% in its time before Overhaul or life limit" and the available hours before overhaul of both engines.  *Id.* at ¶30.  Mr. Rovati made the same express representations in the October 12th Bid Response with respect to Helicopter 6690.  *Id.* at ¶34.

Even after the agreements were signed which specifically referenced the available hours before overhaul of each engine for Helicopter 6687 and Helicopter 6690, respectively, on December 12, 2018, just days before the delivery of Helicopter 6687 to ACOFA, Mr. Rovati once again reaffirmed in writing the hours remaining before overhaul for the Helicopters.  *Id.* at ¶¶44-45.  It is therefore undisputed that Defendants knowingly and intentionally misrepresented the condition of the Helicopters – repeatedly, in writing – to ACOFA in order to secure the 6687 Contract and the 6690 Contract.

Defendants not only knowingly misrepresented the adequacy of the Helicopters, but also their financial condition.  Both the September 7th Bid Response and the October 12th Bid Response contained audited financial statements for CVRA indicating total assets of $4,083,819.83 and total liabilities of $2,019,640.07, with a net income in calendar year 2017 of $1,074,683.85.  *Id.* at ¶¶28 & 34.  Yet, despite representing that CVRA was financially solvent as part of the bid responses, the very next day after the 6690 Contract was signed CVRA filed its Voluntary Petition for Bankruptcy.  *Id.* at ¶48.

Defendants had much to gain from their deception.  Defendants acquired each helicopter for approximately $3 million each and turned around and sold the helicopters to ACOFA for just over $6 million each.  *Id.* at ¶49.  Having laced their pockets with cash, Defendants simply left ACOFA to deal with the resulting issues associated with the Helicopters which did not meet the required technical specifications.

Accordingly, summary judgment should be granted with respect to Count VII of the Amended Complaint in the amount of $3,574,268.33 against all Defendants.  *See Prewitt Enter., LLC v. Tommy Constine Racing, LLC*, 185 So. 3d 566, 569-70 (Fla. 4th DCA 2016) (holding plaintiff proved fraudulent inducement claim where defendant made material misrepresentations of a present fact which induced plaintiff to enter into a contract with the defendant); *see also Maroone Chevrolet, LLC v. Alvarado*, 344 So. 3d 459, 465-66 (Fla. 4th DCA 2022) (holding evidence supported fraud judgment where parties' ability to negotiate fair terms and make an informed decision is undermined by the defendant's fraudulent misrepresentations of a present material fact).

### III.   DEFENDANTS' AFFIRMATIVE DEFENSES DO NOT DEFEAT ACOFA'S CLAIMS.

Defendants' affirmative defenses as they relate to the specific claims addressed in this Motion fail as a matter of law.  To begin with, because Defendants bear the burden of proof at trial on their affirmative defenses, ACOFA need only demonstrate an absence of evidence to support Defendants' defenses as opposed to affirmatively adducing evidence to negate the defenses.  *See Celotex*, 477 U.S. at 322.

#### A.   ACOFA is the Proper Party.

In their first affirmative defense, Defendants claim that ACOFA is not the real party in interest and therefore is merely a nominal party without standing to bring this action.  *See* Answer

at 114.  Rule 17(a), however, squarely rejects this notion and expressly permits ACOFA to bring this action even if the Armada and DIMAR are supposed beneficiaries under the contract.  *See* FED. CIV. P. 17(a)(1)(F) (providing that "a party with whom or in whose name a contract has been made for another's benefit" may "sue in their own names without joining the person for whose benefit the action is brought").  The real party in interest is "the party who, by the substantive law, has the right sought to be enforced."  *Global Aerospace, Inc. v. Platinum Jet Management*, LLC, No. 09-60756-CIV, 2011 WL 248543, at *6 (S.D. Fla. Jan. 24, 2011).  It is undisputed that the 6687 Contract and the 6690 Contract are both between ACOFA, on the one hand, and UT OVL, on the other.  *See* Stmt. of Facts at ¶¶32 & 36.  ACOFA is therefore the real party in interest and has standing to sue pursuant to Rule 17(a).  *See Global Aerospace*, 2011 WL 248543 at *6; *see also V Fee Challenger Aviation, LLC v. Aerofly, SA de CV*, 2022 WL 3701232, *2 (S.D. Fla. April 7, 2022) (holding that the plaintiff, as the contracting party, had standing to sue and was the real party in interest under Rule 17).

### B.    The Armada and DIMAR are Not Indispensable Parties.

Defendants' second affirmative defense alleges that ACOFA failed to join indispensable parties, i.e., the Colombian Ministry of Defense (the "Ministry"), the Armada and DIMAR.  [ECF No. 114] at 14.  Rule 19 provides a two-step analysis to determine whether an action can proceed in the absence of a non-party.  *See City of Marietta v. CSX Transp., Inc.*, 196 F.3d 1300, 1305 (11th Cir. 1999).  "The first question is whether complete relief can be afforded in the present procedural posture, or whether the nonparty's absence will impede either the nonparty's protection of an interest at stake or subject parties to a risk of inconsistent obligations."  *Id.*  The second inquiry is only necessary if the Court concludes that the nonparty is a required party.  *See id.*  Under the second inquiry, the Court must determine "whether, in equity and good conscience, the action

should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b); *see City of Marietta*, 196 F.3d at 1305.  Because the Ministry, the Armada, and DIMAR are not required parties to this action, the Court's analysis ends at the first step of the analysis and there is no need to proceed to the second inquiry.

"In general, a nonparty to a commercial contract is not a necessary party to an adjudication of rights under the contract." *HDR Engineering, Inc. v. R.C.T. Engineering, Inc.*, No. 08-81040-CIV, 2010 WL 2402908, *2 (S.D. Fla. June 15, 2010) (internal quotation omitted).  Indeed, it is well settled law that "a contracting party is the paradigm of an indispensable party." *Id.*  As set forth above, it is undisputed that only ACOFA is a contracting party under the Contracts.  In *HDR Engineering* the defendants asserted that the plaintiff would gain a windfall in the form of double recovery if a non-party, NEFCO, was not joined to the action. *Id.* at *4.  In rejecting these arguments, the Court first noted that NEFCO was not a contractual party and that a nonparty to a commercial contract is not a necessary party to an adjudication of rights under a contract.  *Id*. at *2. The Court in *HDR* further explained that in the event of a subsequent suit involving the nonparty, a double recovery could be prevented "by showing that Plaintiffs have received payment for their loss from Defendants" therefore overcoming any perceived prejudice. *Id.* at *4. The Court reasoned that because NEFCO was not a necessary party to be joined under Rule 19(a), it did not need to address whether NEFCO was an indispensable party under Rule 19(b).  *Id.* at *5.

To hold that a third-party beneficiary under a contract is an indispensable party under Rule 19 would swallow wholesale the express provisions of Rule 17(a).  Indeed, it would be anomalous for Rule 17(a) to expressly allow a contracting party to bring forth an action under a contract without joining a third-party beneficiary thereunder, but nonetheless through Rule 19 require the third-party beneficiary's joinder as an indispensable party. *See Ohio Valley Envtl. Coal. v. Bulen*,

429 F.3d 493, 504-05 (4th Cir. 2005) (determining that absentees were not necessary parties when their interests were identical to those of existing parties who were capable of adequately representing the absentees' interests).

What is more, and as set forth in the Declaration of CF. Cristian Enrique Espitia Riaño, as a matter of Colombian law neither the Ministry, the Armada, or DIMAR can bring the claims at issue under the Contracts.  *See* Declaration of CF. Cristian Enrique Espitia Riaño, attached as **Exhibit "A."**  The only entity authorized under Colombian law to bring these claims based on the Contracts is ACOFA.  *See id*. at ¶¶20-21.  Thus, the Ministry, the Armada, and DIMAR are not indispensable parties and this defense also fails as a matter of law.  *See HDR Engineering*, 2010 WL 2402908, at *4 ("In general, courts are reluctant to join a nonparty for the purpose of protecting that nonparty's interests when the nonparty itself has not claimed an interest in the outcome of the suit.").

### C.     Defenses 3 & 10 are Mere Denials

Defendants in their third affirmative defense allege ACOFA's claim for fraudulent concealment in Count VII fails "**because there was no concealment of any kind**." [ECF No. 114] at 14 (emphasis in original).  Similarly, in their tenth dense Defendants allege that ACOFA's claims for breach of contract in Counts III and IV fail because ACOFA "has not suffered any damages" given that "Defendants fully performed under the terms and conditions of the Parties [sic] agreement." *Id*. at 24.  These defenses fail as they are mere denials of ACOFA's claims.

"An affirmative defense is established when a defendant admits the essential facts of the complaint and sets up other facts in justification or avoidance." *Lebron v. Royal Caribbean Cruises, Ltd.*, Case No. 16-24687-CIV, 2017 WL 7792720, at *2 (S.D. Fla. Aug. 8, 2017).  "A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."

*Id*. (quoting *Flav-O-Rich, Inc. v. Rawson Food Serv., Inc.*, 846 F.2d 1343 (11th Cir. 1988)).  Here, whether Defendants concealed a material fact which ACOFA relied upon to its detriment is an essential element of ACOFA's claim for fraudulent concealment.  *See Hess,* 175 So. 3d at 691 (stating that concealment of a material fact is an essential element of a claim for fraudulent concealment).  Similarly, whether ACOFA can prove damages (and it certainly has, *see* Section II(A), above) is an essential element of a claim for breach of contract.  *See Sierra Equity Group,* 650 F. Supp. 2d at 1228 (stating damages are the third element of a claim for breach of contract).

Accordingly, these two defenses similarly fail as they are not true affirmative defenses but mere denials of ACOFA's claims.

### D.   Defendants' Firth and Seventh Defenses are Inapplicable.

In their fifth and seventh affirmative defenses, Defendants allege that ACOFA failed to mitigate its damages by not performing required maintenance on the Helicopters.  *See* [ECF No. 114] at 17-21.  However, as confirmed by Defendants' own expert, Keyzer Cunha, maintenance post-delivery has no bearing on the condition of the Helicopters at the time of delivery:

> Q.  The maintenance post delivery or your allegation of failure to main[tain] post delivery, would that have impacted in any way the life left in a component at the time of delivery?
>       Not post, but at the time of delivery, would the maintenance afterwards have impacted that?
>
> A.  No.

Deposition of Kleyzer Cunha dated July 27, 2023, at 84:2-8, attached as **Exhibit "B."**

This Motion is premised on ACOFA's claims regarding the condition of the Helicopters at the time of delivery.  Given that any lack of maintenance post-delivery cannot impact or affect the condition of the Helicopters at the time of delivery, these defenses also fail.

**E.      Defendants' Ratification Defense Does Not Bar Claims for Breach of Contract.**

Defendants in their sixth affirmative defense allege that ACOFA ratified the 6687 Contract and 6690 Contract.  *See* [ECF No. 114] at 19.  While both agreements gave ACOFA the option to rescind or reject the Helicopters, that option is permissive and not mandatory.  *See* [ECF No. 90-1 & 90-2] at § 29 (stating that "[t]he Parties *may* cancel this Contract" under certain conditions) (emphasis added in part, original in part).  Florida law permits a party to ratify a contract and sue for damages or rescind by repudiating the transaction.  *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000).  ACOFA here has chosen the former option, i.e., ratifying the contracts and suing for damages as set forth in Counts III and IV of the Amended Complaint.  Thus, this defense similarly fails as ACOFA is within its right to have accepted the agreements and sued for monetary damages, as it has in this action.  *See id.*

**F.      Defendants are not Entitled to Reformation.**

Lastly, in their ninth affirmative defense Defendants claim that the agreements should be reformed due to a mistake between the parties as it related to the requirement that all major components have at least 65% of remaining life available at time of delivery.  *See* [ECF No. 114] at 22-24.  Reformation based on mutual mistake is available "when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument."  *Steel Supplements, Inc. v. Blitz NV, LLC*, Case No. 20-cv-2971, 2023 WL 145322, at *6 (M.D. Fla. Jan. 10, 2023) (quoting *Circle Mortg. Corp. v. Kline*, 645 So. 2d 75, 78 (Fla. 4th DCA 1994).  "Due to the strong presumption that a written agreement accurately expresses the parties' intent, the party seeking reformation based on mutual mistake must prove

its case by clear and convincing evidence." *Id*. (quoting *BrandsMart U.S.A. of W. Palm Beach, Inc. v. DR Lakes, Inc.*, 901 So. 2d 1004, 1006 (Fla. 4th DCA 2005).

Defendants here, however, simply cannot meet the high standard necessary to prove its defense of reformation by clear and convincing evidence.  The 6687 Contract and the 6690 Contract contained a merger clause which provided that anything which "is in addition to or inconsistent with the terms and conditions of this Contract does not bind the other party . . . ." Stmt. of Facts at ¶41.  "In Florida, evidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract." *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1309 (11th Cir. 1998) (internal quotation omitted).  "This rule applies when the parties intend that a written contract incorporate their final and complete agreement." *Id*.  "One way to demonstrate such intent is through the use of a merger clause." *Id*.  Where, as here, a contract contains a merger clause "the agreement is deemed to be 'integrated,' such that evidence of prior or contemporaneous agreements shall not be admitted to contradict the terms of the contract." *Id*.

What is more, Defendants testified and readily admitted that they read the agreements in their entirety before signing same, understood all of their terms, and that nothing was excluded from the 6687 Contract or the 6690 Contract which did not reflect the agreement of the parties. *See* Stmt. of Facts at ¶¶39-40 & 42.  "Where, as here, the clear and convincing standard applies, the summary judgment inquiry as to whether a genuine issue exists [is] whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Steel Supplements*, 2023 WL 145322 at *7 (internal quotation omitted). Defendants simply cannot meet this high burden given the undisputed material facts that Defendants knew full well the terms of the agreement prior to executing same.  *See id*. (granting

summary judgment on reformation claim for mutual mistake where undisputed facts failed to show a mutual mistake by both parties at contract formation).

Accordingly, Defendants' ninth affirmative defense fails and does not bar the Court from granting summary judgment on Counts III, IV, and VII.

## **CONCLUSION**

Based on the foregoing points and authorities, the Court should grant ACOFA summary judgment as to Counts III, IV, and VII, award ACOFA damages in the amount of $2,180,726.13 with respect to Count III against UT OVL, award ACOFA damages in the amount of $1,393,542.20 with respect to Count IV against UT OVL, award ACOFA damages in the amount of $3,574,268.33 against all Defendants,[3] and grant such other and further relief as this Court deems just and proper.

Dated: October 27, 2023

Respectfully Submitted,

**RODRIGUEZ-ALBIZU LAW, P.A.**
*Attorney for Plaintiff The Colombian Air Force Purchasing Agency*
759 SW Federal Highway
Suite 321
Stuart, FL 34994
Tel: (772) 261-5080

By: */s/ Gerardo J. Rodriguez-Albizu*
Gerardo J. Rodriguez-Albizu, Esq.
Fla. Bar No. 61685
E-mail: grodriguez@ralawpa.com

---

[3] Should the Court grant ACOFA summary judgment as to Counts III and IV against UT OVL (which it should), nominal damages for Count VII should be entered against UT OVL while the full amount of damages sought should be entered against OVL and CVRA.  *See Novak v. Gray*, 469 Fed. App'x. 811, 818 (11th Cir. 2012) (stating that under Florida law a plaintiff cannot recover damages against a particular defendant for fraud which duplicate damages awarded for breach of contract).

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on October 27, 2023, a true and correct copy of the foregoing

was by electronic mail on all counsel of record listed below:

**DILICAN LAW FIRM, P.A.**
Lori Dilican, Esq.
8050 SW 72nd Avenue, Apt. No. 2307
Miami, FL 33143
ldilican@dilicanlaw.com
*Attorney for Defendants*


By: */s/ Gerardo J. Rodriguez-Albizu*
Gerardo J. Rodriguez-Albizu, Esq.